ERNEST L. COLE *vs.* JOHN E. CLARK and Building and Lot. Hancock. Opinion February 27, 1893.

*Lien. Contract. Voluntary Service. R. S., c. 91, § § 30, 32.*

A mechanic's lien is dissolved by a failure to file with the town clerk a statement of the amount due him within thirty days after he ceases labor.

The mechanic's lien though arising by virtue of express statute is dependent on the existence of contract and the obligation of debt. There can be no lien in favor of a party who voluntarily performs a service without express or implied promise of payment.

Where the plaintiff loaned his tools for a few minutes, and rendered the trifling service of receiving from the foreman's hand a board which might otherwise have been allowed to fall without danger of injury; *Held*, that they were only spontaneous acts of friendly accommodation performed under circumstances which distinctly repel any implication of a promise to make payment. They were not labor which creates the obligation of debt and which draws after it the security of a lien.

AGREED STATEMENT.

*Deasy and Higgins*, for plaintiff.
*J. A. Peters, Jr.*, for owners.

WHITEHOUSE, J. The defendant, Clark, built the "King Cottage" under a contract with the owners. The plaintiff worked in his employment in erecting it, and brings this suit to enforce a lien on the building to secure the payment of a balance of one hundred and twenty-three dollars and twenty-seven cents for labor performed between February 15 and August 4, and "one half hour's labor" alleged to have been performed on or about August 24, 1891. The statute provides that the lien shall be dissolved unless the claimant files in the office of the town clerk a true statement of the amount due within thirty days after he ceases to labor. The plaintiff claims that he complied with this requirement and preserved his lien by filing such statement on

the 12th day of September, 1891. The owners, who appear in defense, claim that he " ceased to labor" on their cottage on the fourth day of August. They therefore contend that his statement was not seasonably filed in the clerk's office, and that his lien was accordingly dissolved. This is the only question presented for the determination of the court. It is not in controversy that the plaintiff " ceased to labor" on the King Cottage August 4, unless the incident of August 24, hereafter described can reasonably be deemed labor on that day, within the meaning of the statute.

The plaintiff was discharged from the work on the cottage and removed his chest of tools August 4, and a few days after, prior to August 24, a bill of his time on the cottage was rendered to Clark by the foreman with the plaintiff's knowledge. The plaintiff was never engaged in or about the cottage at work again, but remained in Clark's employment in the workshop three-fourths of a mile distant and performed such work as was there assigned him. On the 24th of August, the foreman, Mr. Lawrence, had occasion to place some moulding between two piers at the cottage, a piece of extra work not called for by the contract. The " labor" alleged to have been performed at that time is thereupon described as follows in the agreed statement :

"Not having the necessary material on the ground Lawrence went to Clark's shop to prepare it. At the time he arrived there Cole was around the stable doing nothing, it being the noon hour. Cole's tool chest was in the shop over the stable. When Lawrence went up to the shop over the stable at about one o'clock Cole followed of his own accord. In the shop Lawrence asked Cole for the loan of his tools with which to prepare a moulding. Cole complied with that request and took his "hollows" and " rounds" from his chest near which was the bench. Some lumber being stored on the rafters overhead in the shop, Lawrence swung himself onto the rafters and lumber thereon and selected a board, and instead of dropping it he passed the board down between the rafters, and Cole, who was underneath, took the end nearest him and laid the board on two wooden

horses or benches near by. Lawrence lowered himself down and began work on the board and made of it a moulding which was used as aforesaid. Cole did nothing further except to receive back his tools when Lawrence was through. When Lawrence began his work on the board, Cole began filing a saw for himself. He worked the rest of the half day for Mr. Clark on another job. Nothing was said by either Cole or Lawrence about any charge being made for the above by Cole. Cole himself keeps a book in which he enters his labor by date, person, time or otherwise. But in doing several small jobs on the same day or half day it has been his practice to make one charge to Mr. Clark without designating the place where the work was done; and in this case for the afternoon in question he charged Mr. Clark with a half day's work; but made no special charge for the work above mentioned."

The mechanic's lien though arising by virtue of express statute, is obviously dependent upon the existence of contract and the obligation of debt. The contract is the principal thing and the lien the incident, following the legal liability to pay. Whenever this obligation fails to arise, the security ceases to exist. *Farnham* v. *Davis*, 79 Maine, 282 ; *Wescott* v. *Bunker*, 83 Maine, 499 ; Phillips Mech. Liens, 112 ; Overton's Law of Liens, § 564 ; 2 Jones on Liens, 1235. "There can be no lien," says Judge Thurman in *Chateau* v. *Thompson*, 2 Ohio, N. S. (L. Warden) 114, "unless there is a debt and it would be idle to presume an intention to guard against liens that could never exist for want of a debt to support them." Hence there can be no lien in favor of a party who voluntarily performs a service without express or implied promise of payment. It is a familiar principle that when services are rendered with the knowledge and consent of another under circumstances consistent with contract relations between the parties, a promise to pay is ordinarily implied by law on the part of him who knowingly receives the benefit of them, and is enforced on grounds of justice in order to compel the performance of a legal and moral duty. But all true contracts grow out of the intention of the parties to the transaction in question ; and if in a particular case it satis-

factorily appears from the situation, conduct and mutual relations of the parties, that the service was proffered as an act of friendly accommodation or otherwise rendered without expectation of payment at the time, no promise to pay will afterwards be implied, though a new exigency may arise from the changed relations of the parties. Bishop Cont. § § 219, 220; Metc. Cont. 4; *Brown* v. *Tuttle*, 80 Maine, 162; *Godfrey* v. *Haynes*, 74 Maine, 96; *Potter* v. *Carpenter*, 76 N. Y. 151; *Woods* v. *Ayers*, 39 Mich. 345. The law will not thus permit what was intended at the time as an act of kindness or courtesy to be subsequently converted into the foundation of a pecuniary demand.

In the case at bar the plaintiff's loan of his unused tools for a few minutes, was manifestly but an act of friendly accommodation granted to a fellow workman without expectation of reward. In like manner the trifling service performed by the plaintiff in receiving from the foreman's hand a board which might otherwise have been allowed to fall to the floor without danger of injury, was unmistakably one of those natural and spontaneous acts of courtesy which daily mark the friendly intercourse of men, and enter into the amenities of all social life. It was unquestionably a voluntary and gratuitous act of kindness and civility performed without thought of compensation on the part of either, and under circumstances which distinctly repel any implication of a promise to make payment. Undoubtedly it was not "labor" which creates the obligation of debt and draws after it the security of a lien under our statute. It clearly was not understood to be "labor" when it was performed, and it clearly cannot become "labor" now simply because it would thus remedy the plaintiff's unfortunate neglect to comply with the statute by filing his statement in the clerk's office within thirty days from August 4.

It is, therefore, considered by the court that the plaintiff has no lien on the King Cottage; but it is not controverted that against the defendant Clark there should be entered,

> *Judgment for plaintiff for $123.16 and interest from date of writ.*

PETERS, C. J., VIRGIN, LIBBEY, EMERY and FOSTER, JJ., concurred.