ROWER J. MORIN, D/B/A ROWER J. MORIN & SON

*vs.*

H. W. MAXIM CO., INC. ET AL.

Androscoggin.    Opinion, July 19, 1951.

*Clifford and Clifford*, for claimant.

*W. A. Trafton, Jr.*, for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MURCHIE, C. J. Decision on this bill in equity, dated July 7, 1950, brought by the complainant, pursuant to the provisions of R. S., 1944, Chap. 164, Sec. 38, to preserve and enforce a lien for labor and materials used in the repair of a building owned by one of four named defendants, must be controlled by determination whether the certificate required to be filed by R. S., 1944, Chap. 164, Sec. 36, as identified in the process, was seasonably filed. Neither the filing of a lien certificate, after the expiration of sixty days from the time the last materials or labor were furnished or performed, nor the commencement of process after the expiration of ninety days from that date, is seasonable. *Baker* v. *Fessenden*, 71 Me. 292; *Cole* v. *Clark*, 85 Me. 336, 27 A. 186, 21 L. R. A. 714; *Darrington* v. *Moore*, 88 Me. 569, 34 A. 419; *Woodruff* v. *Hovey*, 91 Me. 116, 39 A. 469; *Hartley* v. *Richardson*, 91 Me. 424, 40 A. 336; *Marshall* v. *Mathieu*, 143 Me. 167, 57 A. (2nd) 400.

In this case two lien certificates were filed, one on April 3, 1950, stating that the last labor and materials were furnished on February 3, 1950. No process was instituted to preserve and enforce it. A second one was filed on June 22, 1950 (dated June 19, 1950), stating that the last of said materials and labor were furnished and performed on June 14, 1950. This is the one the present process was brought to enforce. It is not denied that the complainant did some work on the premises on May 8, 9 and 10, and possibly on May 12, which was incidental to the work completed on or before February 3, or that he painted some sash, storm sash and screens on June 8, 9, 12, 13 and 14. The time for commencing any kind of process to enforce the lien filed on February 3 aforesaid had expired before the first of these dates. The justice who heard the case below found that the painting of the sash, storm sash and screens, in June, was a

part of the work the complainant had contracted to do. This covered, among other things, the painting of "sashes, doors, trim, storm sash and screens," with an express recital that "New screens and storm sash (were) to have two coats." The justice must have found as a fact that June 14 was the date on which the last labor and/or materials were furnished. A decree was entered adjudging complainant to be entitled to the lien claimed and an appeal was duly taken.

The named defendants, in addition to the owner of the premises, are a general contractor, who undertook to make extensive repairs thereto, and who employed the complainant to do the particular work to which the lien relates, and two mortgagees, with whose knowledge and consent the repairs were undertaken. Stipulations entered in the case render it unnecessary to consider the propriety of the prices charged for labor and materials, or whether the work done was performed on, and become part of, the building sought to be reached by the lien. The sole issue is the date on which, under all the circumstances of the case, the complainant must be held to have ceased "to labor or furnish materials," to use the controlling statutory words.

The cause was consolidated in the Trial Court with several other processes involving lien claims upon the premises involved. That consolidation is meaningless to the issue, but is noted because the justice below recorded in his findings that the "defendant, Cook, mortgagee, is the only defendant contesting the validity of the lien," and that he "has instituted foreclosure proceedings." He recorded, also, that the "practical effect" of a successful contest on the part of the appellant would be to give him the benefit of $5,743.80 of labor and materials (the figure named being that of the lien awarded), "which were actually put into the building." In this connection we note that while this court has recognized heretofore that the lien law should be construed favorably to those entitled to its protection, *Shaw* v. *Young,* 87

Me. 271, 32 A. 897; *Hartley* v. *Richardson, supra, Andrew* v. *Bishop,* 132 Me. 447, 172 A. 752, it has also recognized, in *Cole* v. *Clark, supra,* that labor performed cannot be considered as labor entitling one to the benefit of the lien law:

> "simply because it would * remedy * * unfortunate neglect to comply with the statute".

It was said expressly in *Shaw* v. *Young, supra,* and affirmed in *Andrew* v. *Bishop, supra,* in asserting the rule of liberal construction, that the tests were whether the lien had been "honestly earned" and whether the lien claimant was "within the statute." The issue in this case involves the latter question only.

The evidence taken out before a Special Master in Chancery (which is the only evidence heard in the cause) discloses that the complainant, on August 26, 1949, wrote the general contractor, offering, at a fixed price, to do all the painting and decorating in connection with the alterations contemplated on the property in question. The offer was accepted September 6, 1949. Work had already commenced under it at that time, and continued through February 3, 1950. On April 3, 1950, as heretofore noted, a lien certificate was filed pursuant to R. S., 1944, Chap. 164, Sec. 36, asserting a claim for the full contract price for "labor done and materials furnished * * * between second day of September, 1949, and February 3rd, 1950," and declaring that the last items thereof were furnished and performed on the latter date. The work done on May 8, 9 and 10 was nothing more than "touch-up work," and has no bearing on the issue, although it is apparent that it was done after the lapse of more than ninety days from the completion of the contract work, according to the lien certificate then on file.

The record is entirely silent concerning what happened between April 3, 1950, when the first lien certificate was filed, and June 2, 1950, when the complainant wrote the general contractor a letter, the substance of which will be

stated hereafter. It conclusively appears, however, that at some time during the interval, which must have been after the lapse of ninety days from February 3, 1950, the complainant learned in some manner that the lien thus recorded was no longer available for enforcement.

On June 2, 1950, the complainant wrote the general contractor a letter, recalling the contract, wherein, as he stated, he had agreed "among other things" to put two coats of paint "on the new screens and storm sash," and declaring that he had been "waiting" to finish his work under the "written contract," and that the general contractor had been "slow in furnishing" the screens. The letter referred to the fact that the general contractor was "apparantly in financial difficulty" and requested the contractor to furnish "all new storm windows and the new screens so that I may complete my job and file my lien."

The testimony given by the complainant, before the Special Master in Chancery, and the exhibits presented in connection therewith, present an absolute contradiction of the statement that complainant was "waiting to finish up" his work, if that statement was read, as it would be normally, as declaring that his "waiting" dated back to February 3, 1950. He stated under oath, more than once, that when he filed the lien certificate on that date, he thought his work under his contract was completed, or finished. The certificate was prepared and filed for him by an attorney. He went to another after the time had expired for preserving and enforcing his lien under it, pursuant to R. S., 1944, Chap. 164, Sec. 38 (or R. S., 1944, Chap. 164, Sec. 45), and, perhaps, after he had solicited the opportunity to paint new screens and sash, by his letter of June 2, 1950, although there is no direct statement to that effect, in order that he might have a new basis for filing and preserving a lien claim, seasonably. The justice below found expressly, as a purported fact, that his action was legitimate and, consider-

ing the fact that the screens were supplied in accordance with his request, was effective to that end. His decision was based entirely on the report of the Special Master in Chancery whose pertinent factual findings, as recorded in his report, were that the lien certificate filed on June 22, 1950 was filed "within sixty days from the last date of performance of labor or furnishing of materials" and that the process was filed within ninety days thereof.

The standing of factual decisions in equity cases could hardly be expressed more clearly or forcibly than by quoting the statement of Mr. Justice Strout, in *Hartley* v. *Richardson, supra:*

> " 'The decision of a single justice upon matters of fact in an equity hearing, should not be reversed unless it clearly appears that such decision is erroneous.' 'The burden to show the error falls upon the appellant.' 'He must show the decree appealed from to be clearly wrong, otherwise it will be affirmed.' *Young* v. *Witham,* 75 Maine, 536; *Paul* v. *Frye,* 80 Maine, 26."

The burden referred to therein would necessarily be held to have been carried by the present appellant if the principles stated in the foregoing quotation were applicable here. The issue which must control the present case, however, is not one of fact but of law. Despite the use of factual language, the justice below was making a ruling of law in his declaration that the complainant's purpose in seeking to secure screens to paint to preserve his lien was legitimate and effective. The complainant places his reliance on three decisions of this court, cited *infra,* one of which served as the foundation for the action of the justice below who stated in his findings that the "rule" therein laid down "has application." That case is *Delano Mill Co.* v. *Warren,* 123 Me. 408, 123 A. 417. Therein, one who became a lien claimant for materials representing an aggregate charge exceeding $10,000 had furnished all except one small item on or prior

to October 28, 1922, and had billed the defendants on that day for his full contract price. Thereafter, and within the lien period, the defendant had notified the supplier that an additional door was required. This was supplied on December 28, 1922, and called for no increase in the account. The lien certificate, filed February 20, 1923, alleging that the last of the materials had been furnished on the later date, was held to have been filed seasonably.

Earlier cases cited in complainant's brief are *Farnham* v. *Richardson,* 91 Me. 559, 40 A. 553, and *Van Wart* v. *Rees,* 112 Me. 404, 92 A. 328.

In the first of these the lien claimant furnished materials which he believed represented all he had contracted to furnish on or before September 19, 1895, but thereafter, within the lien period, he delivered an additional door in exchange for one which defendant's employees declared did not fit the frame prepared for it. The later delivery was on October 1, 1895, and the lien certificate filed on November 6, 1895 alleged that the last of the materials was furnished on said October 1. The lien period then fixed by statute being forty days (R. S., 1883, Chap. 91, Sec. 32, as amended by P. L., 1895, Chap. 34), the filing was seasonable if October 1st was the control day, but not if September 19 was the correct date. It was held to have been filed seasonably.

In the other cited case, *Van Wart* v. *Rees,* the man who became a lien claimant supplied materials for a single job during two periods, one expiring on December 5, 1911 and the other beginning on February 14, 1912. On said December 5 the carpenter employed by the defendant, when the materials were ordered, left his work, and nothing was done on the job until February 14th, 1912, when a new carpenter was secured. The lien certificate was filed seasonably by reference to the February 14th date, but not otherwise. The filing was declared seasonable.

The cases on which complainant relies are clearly distinguishable from his own. In two of them the late delivery of a small item of materials, and in the third the interruption of the supply of materials, was at the instance of, or on the responsibility of, the property owner, or one acting on his behalf. Taking them in chronological order, the court declared, in *Farnham* v. *Richardson, supra,* not only that the exchange of the doors was "made at the request of the defendant * and for his convenience," but that it could not be claimed that the charge made for it:

> "was an afterthought, made for the purpose of extending the time within which the claimant could file his lien claim for the materials furnished previously".

In *Van Wart* v. *Rees, supra,* the interruption of work was caused by the defendant's carpenter, and there was express statement in the opinion that there was nothing in the circumstances attending it to "impugn the good faith" of the material-man. Finally, in *Delano Mill Co.* v. *Warren, supra,* the court declared specifically that it was not contended "that the delivery of the door was held back by the plaintiff to keep alive its lien."

The outstandingly unique feature of the complainant's case is found in the filing of two lien certificates alleging different dates for the completion of the work. Whether or not he understood that the general contractor was in financial difficulties when the first lien certificate was filed, as he did when his letter of June 2 was written, it is apparent that he filed it to protect his rights under a contract he believed he had performed fully. So, apparently, the general contractor viewed it. The evidence discloses that a representative of the latter discovered in May that the work done prior to February 3 required some touching up, and it was his notice to that effect that accounts for the work in that line done in May. No complaint was made by him that

all the work contemplated by the contract had not been performed. Instead, he testified with reference to the screens that he had no money to buy more and that the complainant had "painted only what was there in the old building."

The facts present a patent attempt on the part of one entitled to the protection of the lien law, who had permitted his rights thereunder to lapse by his own fault, to have those rights restored by a palpable fiction, in which the owner of the premises, or his general contractor, joined after it was apparent that the owner was to lose the property. To permit the complainant to hold his lien under such circumstances would do violence to well established law.

*Appeal sustained.*

*Decree reversed.*

*New decree in accordance with this opinion.*