STATE OF MAINE

KENNEBEC, ss.

DISTRICT COURT
LOCATION: AUGUSTA
DOCKET NO. CV-05-119

DHM - KEN - 11/2/2007

JEANNIE S. VAN DEVENTER,

     Plaintiff

v.

WILLIAM F. JUDSON,

     Defendant

DONALD L. GARBRECHT
LAW LIBRARY

JAN 16 2007

DECISION AND ORDER

This matter is before the court after bench trial. In her complaint, plaintiff alleges that defendant borrowed sums from her through the use of her credit card which, in spite of demands, have not been repaid. Secondly, plaintiff alleges that she was employed by the defendant as a secretary/business manager from April 1, 2003, to December 17, 2004, for which she has not received compensation. Plaintiff asserts a demand in accordance with the State Employment Law, 26 M.R.S.A. § 626. She seeks judgment for the amount of the unpaid loans and unpaid wages including liquidated damages provided by the statute.

It is defendant's position that he and the plaintiff were romantically involved and that her utilization of the credit card and services performed were in her capacity as a participant with the defendant in a joint venture for which she was to be fully compensated with an expectation of future profits upon the establishment of a successful business.

The plaintiff, a 42 year-old woman, has a two-year associates degree in accounting. Prior to 2002, she was a sales representative for Schwanns but received an injury in that employment and was unable to work for a significant period of time. She

began dating the defendant during this period ultimately traveling with him and performing services in support of his business. At the time, the defendant was working as a long haul truck driver under a lease arrangement with Dysart's. In April of 2003, the defendant bought his own tractor and the parties began discussing a business relationship. At the same time, the romantic aspect of the relationship ceased to continue and rather than traveling with the defendant, the plaintiff utilized her apartment in Waterville to conduct bookkeeping activities for the defendant for which the defendant paid a portion of her rent. By July of 2003, the special relationship had ended and the parties operated solely in a business capacity.

In April of 2003, the plaintiff had excellent credit and the use of two credit cards. The defendant could not get credit and, among other things, had been turned down by T-Mobile for a contract for cell phones. In addition, plaintiff used a portion of her workers' compensation settlement from Schwanns to assist the defendant in the purchase of his trailer. Defendant spent all of his time on the road throughout the country and relied upon plaintiff to maintain the books, pay the bills, and otherwise run the administration of defendant's work. Starting in January of 2004, plaintiff started using her credit cards to pay the bills commencing with a contract with T-Mobile for cell phones. Reimbursement for these payments and other expenses were made by defendant on the occasions when he returned to Maine by leaving signed blank checks with the plaintiff.

During the period April through December 2003, the plaintiff was on the road with the defendant about fifty percent of the time during which time she would do the bookkeeping, keep journals, account for fuel taxes, and other trucking activities through the use of a laptop computer, printer and cell phone. The other fifty percent of the time she operated out of her apartment on Roosevelt Avenue accounting for loads, keeping a

journal and accountability for fuel taxes. During this time, defendant was operating a sole proprietorship known as Leewood Transportation and was attempting to get the authority to do his own interstate trucking. Throughout this period, the defendant was telling the plaintiff that, "When his company gets going, you will be compensated."

The operating authority sought by the defendant was received in January of 2004. This represented more money, a greater diversification for customers and defendant no longer needed to "lease on" to another. In keeping with that authority, defendant made arrangements to take on additional drivers. While plaintiff avers that the defendant had up to five, and possibly seven, drivers under contract at one time, the defendant testified that the most he ever had was three drivers. Nevertheless, it is plaintiff's position that from February 2004 through December 2004, Leewood Transportation operated with four operators and two drivers plus the defendant with three operators and two drivers at one time.

Because of the load of office work required, the parties made arrangements to lease a residence in Fairfield utilizing it both as living quarters and an office. In addition to plaintiff and defendant living separately within the building, the defendant had an elderly tenant with plaintiff and others providing domestic services. Because of the time differentials, it was necessary for plaintiff to communicate with defendant's drivers at all hours of the day and night. Throughout the 48 contiguous states she was managing three trucks with six to ten calls per day on each unit assisting in lining up loads, pickup dates and times, etc. In addition, she performed all bookkeeping services and claims to have averaged 50 hours per week. Defendant made no effort to participate in the paperwork nor to become knowledgeable as to the bookkeeping.

At some point in time plaintiff discussed with defendant the need to establish a payroll. Defendant agreed to take this step "when business gets going." It is unclear

from the evidence when this discussion took place but the evidence reveals that during the period of May 6 through July 24, a series of checks were written to the plaintiff with defendant's signature indicating a pay period at the rate of $310 per week for a total of more than $2,500. It is plaintiff's unrebutted testimony that the issuance of payroll checks was well known to the defendant and that he directed her to cease that practice because he did not want his business to become liable for Social Security taxes.

As time went on, the relationship between the parties became soured, primarily because plaintiff was managing a substantial workload, caring for the tenants as well as one of defendant's drivers and, while she was having her living expenses paid, was not receiving a regular income. After a series of threatening circumstances, plaintiff left the residence with nothing but the shirt on her back. Under police escort, she returned to the residence to pick up her laptop computer and her clothes.

At the hearing, the plaintiff established that an Elite Visa credit card account has a remaining balance for funds expended for defendant's business for which she has not been reimbursed in the amount of $5,856. While there was substantial testimony and many exhibits relating to the use of that credit card including payments made, deposits entered, and checks proferred, the court is satisfied that the plaintiff has established that it is more likely than not that the amount of $5,856 remains unpaid for which she is entitled to judgment.

Plaintiff also presented evidence through the use a Chase Gold Visa card account for which she claims an unpaid balance of $1,810.15. After testimony and an

examination of the exhibits, the court is not satisfied that the plaintiff has met her burden in this regard and denies recovery.[1]

The major dispute in this matter is the claim by the plaintiff that she is entitled to wages as an employee of defendant and defendant's clear assertion that the plaintiff has not been able to establish an employment contract. Citing *Bates v. Anderson*, 614 A.2d 551(Me. 1992), defendant notes that there was no mutual assent of the parties, express or implied, and that therefore there were no material terms sufficiently definite to enable the court to determine the exact meaning and fix the exact legal liability of the parties. Defendant argues that plaintiff has not established any agreement on rate of pay citing *Bragdon v. Shapiro*, 146 A.2d 83 (Me. 1951), also citing *Ross v. Mancini*, 146 Me. 83 (1950) (quoting RESTATEMENT OF CONTRACTS § 32). Defendant does admit that possibly he may have made a conditional promise that plaintiff would be reimbursed once the business "got going" but notes that a person may not be held to their promise and be bound by same until the condition is fulfilled. Citing *Lynch v. Stebbins*, 127 Me. 203 (1928).

Plaintiff argues that she is entitled to the reasonable value of her services during the period in question noting that her subsequent employment makes it clear that she is entitled to a minimum of $10 an hour as a matter of merit and, furthermore, that the person performing her services subsequent to her departure is being paid at the rate of $17 an hour. In the alternative to that claim, plaintiff seeks to be paid the minimum wage, all these claims founded upon equitable principles. However, the court is not satisfied that it needs to rely on such principles since there is clear evidence of an implied contract under these circumstances for the reasons following.

---

[1] Plaintiff withdrew this claim at trial but upon reexamination of the documentation, reasserted this claim in her written closing argument. The court has reconsidered that claim but is satisfied that it has not been established to a probability.

In April, May and June of 2003, plaintiff was paying herself with the use of presigned checks explicitly stating the wage of $310 per week. At the same time, she was being reimbursed her living expenses, i.e., room and board. Defendant was aware of these payments and caused them to cease specifically in order to avoid obligations for Social Security. There is no evidence that at any time the defendant objected to the rate of pay or plaintiff receiving this money. This relationship, inconsistent with romantic involvement or a joint venture, created an environment where services were rendered by the plaintiff with the knowledge and consent of the defendant under circumstances consistent with contract relations between the two of them. This relationship created a promise to pay ordinarily implied by law on the part of the defendant who knowingly received the benefit of the services and is to be enforced by the court on grounds of justice in order to compel the performance of a legal and moral duty. *Colvin v. Barrett*, 151 Me. 344, 118 A.2d 775 (Me. 1955), citing *Cole v. Clark*, 85 Me. 336, 338, 27 A. 186. In 1957, the case of *Stinson v. Bridges* states it is:

> incumbent upon the plaintiff to satisfy the jury that the services were rendered under circumstances consistent with contract relations between the parties, and that the defendant either expressly agreed to pay for the services, or to give certain property therefore, or that they were rendered by the plaintiff in pursuance of a mutual understanding between the parties that he was to receive payment, or in the expectation and belief that he was to receive payment, and that the circumstances of the case and the conduct of the defendant justified such expectation and belief.

*Saunders v. Saunders*, 90 Me. 284, 290, 38 A. 172.

> A legally binding agreement must have the mutual assent of the parties, either expressly or impliedly, to be bound by all its material terms and must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties.

*Bates v. Anderson*, 614 A.2d 551 (Me. 1992); see also *Roy v. Danis*, 553 A.2d 663-664 (Me. 1989).

In 1998, Maine law starts to see the term *"quantum meruit"*, sometimes called "contract implied in fact." This contract is implied because it is inferred from the conduct of the parties. *Paffhausen v. Balano*, 1998 ME 47, 708 A.2d 269.

In the three months at the beginning of this business relationship, the plaintiff was compensated with the knowledge of the defendant at the rate of $7.75 per hour for a 40-hour week and received her living expenses. The last payment in July of 2003 was for the pay period June 20 through 27. Accordingly, from July 2003 to December of 2004 when she was abruptly terminated, there are 76 weeks for which she has not been compensated.

Plaintiff presented substantial testimony and information regarding the work expected of her in being the business manager of a multi-unit trucking company operating throughout the continental 48 states picking up loads, dropping loads, acquiring contracts for loads, keeping records required by interstate regulatory authorities, accounting for fuel taxes, and seeing that the drivers are properly compensated. She claims that she worked an average of 50 hours per week for which she is statutorily entitled to overtime. Because no records were kept of her hours for which defendant had a statutory duty, she was in control of the bookkeeping and certainly had the capability of maintaining such records herself. This fact, when balanced against the benefits she received by virtue of having all of her living expenses paid by the defendant consistent with the understanding back in April through June of 2003, satisfies the court that she is fully compensated for any overtime or work at unusual hours which she asserts.

Under date of February 11, 2005, counsel for plaintiff made demand on then counsel for defendant for unpaid wages owed in an amount claimed by her of $44,500 representing 89 weeks from April 1, 2003 to December 17, 2004, for 50 hours per week at

$10 per hour. No compensation resulted and therefore plaintiff claims liquidated damages under the law.

Title 26 M.R.S.A. § 626 provides:

> An employee leaving employment must be paid in full within a reasonable time after demand at the office of the employer where perils are kept and wages are paid, . . .

Defendant disputes any understanding of employment on the part of the plaintiff but asserts that she was an independent contractor acting in a joint venture. An analysis of the circumstances requires the court to apply certain factors to determine whether the plaintiff was an independent contractor or an employee. *Taylor v. Kennedy*, 1998 ME 234, 719 A.2d 525. Citing *Murray's Case*, 130 Me. 181, 186, 154 A. 352, 354 (1931), the factors to be considered are:

> (1)     the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price;
> (2)     independent nature of his business or his distinct calling;
> (3)     his employment of assistance with the right to supervise their activities;
> (4)     his obligation to furnish necessary tools, supplies, and materials;
> (5)     his right to control the progress of the work except as to final results;
> (6)     the time for which the workman is employed;
> (7)     the method of payment, whether by time or by job;
> (8)     whether the work is part of the regular business of the employer.

"The most important factor is the right to control." *Taylor v. Kennedy*, 719 A.2d at 528.

There was no express contract, the plaintiff was not engaged in an independent business, the plaintiff had no assistance with the right to supervise their activities, the plaintiff was under no obligation to furnish tools, supplies or materials, plaintiff was operating under the control of the defendant notwithstanding his lack of day-to-day supervision, plaintiff made all payments in accordance with the understanding of the defendant and she was doing work which was part of the regular business of the defendant. While there is no evidence that the defendant exerted supervisory control

over the hour-to-hour activities of the plaintiff, he clearly delegated full authority to manage the business, maintain the books and meet all his obligations to regulatory authorities. Defendant controlled the requirements of plaintiff's work. There is nothing in plaintiff's activities to suggest her status as an independent contractor.

The plaintiff having made the required demand, the court is satisfied that the provisions of 26 M.R.S.A. § 626 apply. The court finds that plaintiff is entitled to wages in the amount of $310 per week for a 40-hour week for 76 weeks from July 2003 to December 17, 2004, for a total of $23,560. In accordance with 26 M.R.S.A. § 626, the plaintiff is entitled to interest on this amount and the court will apply an under $30,000 pre-judgment interest rate of 8%. Because the judgment represents unpaid wages entitled to protection under the statute, the mandatory nature of the law requires the use of liquidated damages in an amount twice the amount of the wages due for a total of $47,120. Accordingly, the amount of wages and liquidated damages to be awarded is $70,680. In addition, plaintiff is entitled to be reimbursed the amount due for defendant's expenses paid by plaintiff through the use of her credit in the amount of $5,856.

The entry will be:

> Judgment for plaintiff in the amount of $76,536 plus 8% interest and costs; judgment for plaintiff for attorney's fees in an amount to be established by affidavit.

Dated: November __2__, 2006

Donald H. Marden
Justice, Superior Court

JEANNIE S VANDEVENTER   - PLAINTIFF
PO BOX 446
FAIRFIELD ME 04937
Attorney for: JEANNIE S VANDEVENTER
DAVID LIPMAN   - RETAINED 03/31/2005
LIPMAN & KATZ & MCKEE, PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051


vs
WILLIAM F JUDSON   - DEFENDANT
19 MONTCALM STREET,
FAIRFIELD ME 04937
Attorney for: WILLIAM F JUDSON
J WILLIAM BATTEN   - RETAINED
JABAR BATTEN RINGER & MURPHY
ONE CENTER STREET
WATERVILLE ME 04901-5495

Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 03/31/2005

# Docket Events:

03/31/2005 FILING DOCUMENT - COMPLAINT FILED ON 03/31/2005

04/01/2005 Party(s):  JEANNIE S VANDEVENTER
           ATTORNEY - RETAINED ENTERED ON 03/31/2005
           Plaintiff's Attorney: DAVID LIPMAN

04/01/2005 Party(s):  JEANNIE S VANDEVENTER
           MOTION - APPROVAL ATTACH/TRUSTEE PROC FILED ON 03/31/2005
           Plaintiff's Attorney:  DAVID LIPMAN
           WITH MEMORANDUM OF LAW, DRAFT ORDER, NOTICE OF HEARING

05/18/2005 Party(s):  WILLIAM F JUDSON
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 05/07/2005

06/22/2005 Party(s):  WILLIAM F JUDSON
           SUMMONS/SERVICE - PROOF OF SERVICE SERVED ON 05/07/2005

06/22/2005 Party(s):  WILLIAM F JUDSON
           ATTORNEY - RETAINED ENTERED ON 05/27/2005
           Defendant's Attorney: J WILLIAM BATTEN

06/22/2005 Party(s):  WILLIAM F JUDSON
           RESPONSIVE PLEADING - ANSWER FILED ON 05/27/2005
           Defendant's Attorney: J WILLIAM BATTEN

06/22/2005 Party(s):  WILLIAM F JUDSON
           RESPONSIVE PLEADING - RESPONSE FILED ON 06/01/2005
           Defendant's Attorney: J WILLIAM BATTEN
           OPPOSITION TO PLAINTIFF'S MOTION FOR APPROVAL OF ATTACHEMNT AND TRUSTEE PROCESS