**The PINELAND LUMBER CO.**

v.

**John W. ROBINSON, Patricia R. Robinson, Androscoggin County Savings Bank and Norman Rioux.**

Supreme Judicial Court of Maine.

Jan. 25, 1978.

Platz & Thompson by Philip K. Hargesheimer (orally), Lewiston, for plaintiff.

Isaacson & Isaacson by Robert S. Hark (orally), Lewiston, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DUFRESNE, Active Retired Justice.[1]

This is an appeal from a judgment entered in the Superior Court (Androscoggin County) dismissing the plaintiff's complaint which seeks to enforce a materialmen's lien against the real estate of the defendants, John W. Robinson and Patricia R. Robinson,

---

1. Mr. Justice Dufresne sat at argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

pursuant to 10 M.R.S.A., §§ 3251–3265. At issue before us is the validity of the plaintiff-subcontractor's materialmen's lien statement for materials supplied in the "erecting, altering, . . . or repairing" of the Robinson house pursuant to 10 M.R.S.A., § 3253.[2] The Robinsons challenged its validity on the ground that the lien claim was not in compliance with the statutory mandate requiring such lien statement to be "subscribed and sworn to by the person claiming the lien, or by someone in his behalf." We affirm the dismissal judgment of the Superior Court and deny the plaintiff's appeal.

In the spring of 1974 the plaintiff, The Pineland Lumber Co. (Pineland), contracted with the defendant, Norman Rioux, doing business as Reo Construction Co. (Contractor), and agreed to furnish him building materials for use in the erection of a home, which Rioux had contracted to build for the Robinsons. The Robinson property is located in the City of Auburn. On July 8, 1974 Pineland timely filed in the office of the register of deeds in and for the County of Androscoggin a notice of lien against the Robinson property, which it contends satisfies the requirements of 10 M.R.S.A., § 3253. Pineland subsequently brought the instant complaint pursuant to 10 M.R.S.A., § 3255 to enforce its purported lien against the Robinson property in its endeavor to recover the value of the supplies furnished Rioux, the contractor, joining as party defendant the mortgagee bank which had financed the Robinsons in the building of their dwelling-house.

The pertinent parts of the plaintiff's notice of lien claim filed pursuant to 10 M.R.S.A., § 3253 in the office of the register of deeds, the record of which was admitted in evidence, read as follows:

"I, KENNETH A. SMALL, of Auburn, Maine, President of THE PINELAND LUMBER CO., a Maine corporation located in Lewiston, Maine, certify on oath that the following is a true statement of the amounts due to THE PINELAND LUMBER CO., for labor done and materials furnished to NORMAN RIOUX of Lewiston, Maine, (d/b/a REO CONSTRUCTION CO.) for incorporation in a building owned by JOHN W. ROBINSON and PATRICIA R. ROBINSON of Auburn, Maine . . . , situated in Auburn, in the County of Androscoggin and State of Maine upon a certain lot or parcel of land, . . . , bounded and described as follows:

$$* \quad * \quad * \quad * \quad * \quad *$$

The materials furnished are as follows:

$$* \quad * \quad * \quad * \quad * \quad *$$

The first materials were furnished on March 6, 1974, and the last were furnished on May 29, 1974, as shown by the above statement.

All materials were furnished with the consent of the owner.

By virtue of the foregoing, a lien is claimed upon said building and said land.

Dated at Lewiston, Maine this eighth day of July, 1974.

      THE PINELAND LUMBER CO.

      By *Kenneth A. Small*

                  President

STATE OF MAINE
ANDROSCOGGIN, ss

               July 8, 1974.

Then personally appeared the above named, KENNETH A. SMALL, President of THE PINELAND LUMBER CO., and acknowledged the foregoing instru-

2. 10 M.R.S.A., § 3253, at the time pertinent to these proceedings, provided as follows: "The lien mentioned in section 3252 shall be dissolved, unless the claimant, within 60 days after he ceases to labor, furnish materials or perform services, files in the office of the register of deeds in the county or registry district in which such building, wharf or pier is situated a true statement of the amount due him, with all just credits given, together with a description of the property intended to be covered by the lien sufficiently accurate to identify it, and the names of the owners, if known; which shall be subscribed and sworn to by the person claiming the lien, or by someone in his behalf, and recorded in a book kept for that purpose by the register of deeds for said county or registry district, who is entitled to the same fees therefor as for recording mortgages. This section shall not apply where the labor, materials or services are furnished by a contract with the owner of the property affected."

ment to be his free act and deed in his said capacity and the free act and deed of said corporation.

Before me,
*Lois A. Buschmann*
Justice of the Peace"

Thus, the issue is, whether the reference statement of lien claim was fatally defective for failure to have affixed to it a jurat instead of the certificate of acknowledgment which it exhibits.

■ Section 3251 of Title 10, M.R.S.A. provides that "[w]hoever performs labor or furnishes labor or materials . . . in erecting, altering, moving or repairing a house, building or appurtenances, . . . by virtue of a contract with or by consent of the owner, has a lien thereon and on the land on which it stands and on any interest such owner has in the same, to secure payment thereof, with costs. . . ." Hence, the materialmen's lien, wholly of statutory origin, has its onset as such from the moment the materials furnished by the subcontractor are used in erecting, altering or repairing the building involved, provided the same is done by consent of the owner. See *Witham v. Wing,* 108 Me. 364, 373, 81 A. 100 (1911). But, at that stage the lien is inchoate only; and, where there is no privity of contract between the owner and the materialman, such lien will not ripen, but "shall be dissolved," unless the materialman records his lien-claim statement *in the form* provided by 10 M.R.S.A., § 3253 in the office of the register of deeds for the county in which the building is situated within the time fixed therein and unless he brings his action to enforce his lien within the time fixed by 10 M.R.S.A., § 3255.

*Our Court has construed the time strictures of our materialmen's lien statute strictly and has held that, since the Legislature saw fit to provide that this special right created in favor of materialmen should exist only during a limited period of time, the courts are without jurisdiction to entertain actions for its enforcement when the period of its availability has expired. *Bellegarde Custom Kitchens v. Leavitt,* Me., 295 A.2d 909 (1972); *Pendleton v. Sard,*

Me., 297 A.2d 889 (1972); *Morin v. Maxim,* 146 Me. 421, 82 A.2d 789 (1951).

Notwithstanding the rule of strict construction adhered to respecting the time within which notice of the lien claim must be filed for recording and action to enforce the lien must be filed with the clerk of courts, our Court has stated that it now will construe such statutes liberally "to further their equity and efficacy when it is clear that the lien has been honestly earned, *and the lien claimant is within the statute.*" (Emphasis provided). See *Andrew v. Bishop,* 132 Me. 447, 172 A. 752 (1934); *Otis Elevator Company v. Finks,* 131 Me. 95, 159 A. 563 (1932); *Shaw v. Young,* 87 Me. 271, 32 A. 897 (1895).

The statute itself has called for liberality of interpretation respecting the contents of the subscribed and sworn to statement of lien claim, by providing that

"[n]o inaccuracy in such statement relating to said property, if the same can be reasonably recognized, or in stating the amount due for labor, materials or services invalidates the proceedings, unless it appears that the person making it willfully claims more than his due." 10 M.R.S.A., § 3254.

See *Durling v. Gould,* 83 Me. 134, 21 A. 833 (1890); *Foss v. Desjardins,* 98 Me. 539, 57 A. 881 (1904).

■ Even so, as stated in *Andrew v. Bishop,* supra, because the origin of the materialmen's lien is statutory and was unknown at common law, every jurisdictional requirement must be met and all conditions precedent as prescribed by statute must be complied with, before the lienor can prevail. In other words, the lienor must bring himself within the statute.

Thus, it appears that our Court has articulated a dual standard in its approach to the materialmen's lien statute. The Oregon Court has adopted a similar dual interpretive position respecting its statute, which is as follows:

"It is well established in this state that because the right to a lien is purely statutory, a claimant to such a lien must in the

first instance bring himself clearly within the terms of such law. The statute is strictly construed as to persons entitled to its benefits and as to the procedure necessary to perfect the lien. . . . However, when the claimant's right to a lien has been clearly established, the law will be liberally interpreted toward accomplishing the purposes of its enactment." *Anderson v. Chambliss,* 199 Or. 400, 262 P.2d 298, 300 (1953).

■ To perfect his lien claim and bring himself within the statute, the claimant, who furnishes materials in the erection, alteration or repairing of a building and who has no privity of contract with the owner, but does so furnish the materials by consent of the owner, such as the plaintiff subcontractor in the instant case, *must file* in the office of the register of deeds, as required by the lien statute, within 60 days after the materials are furnished, *a true statement* of the amount due him, with all just credits given, together with a description of the property intended to be covered by the lien sufficiently accurate to identify it, and the names of the owners, if known; *which statement shall be subscribed and sworn to* by the person claiming the lien, or by someone in his behalf.

In *Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.,* Me., 351 A.2d 845 (1976), we recognized the serious potential for substantial harm to an owner-defendant in connection with prejudgment attachments of his real estate. Similar policy considerations underlie the application of the strict construction rule to the various steps made necessary by the statute to preserve a materialmen's lien. Indeed, such a lien effectively deprives the owner of his ability to convey a clear title while the lien remains outstanding; the credit of the owner of the property subjected to the lien is impaired; the claim of lien may be used against the owner as a coercive means toward settlement of the demand.

The statute requires the statement to be subscribed. Our Court in *Stratton v. Shoenbar,* 10 A. 446 (Me.1887) has construed the statute as contemplating a written doc-

ument to which there must be a writing of the claimant's signature for the purpose of attesting the correctness of the statement.

■ The statute further requires the statement to be "sworn to." The term "sworn to" implies that the subscriber shall have declared upon oath the truth of the statement to which his name is subscribed. The requirement that the statement be "sworn to" in the instant case contemplates the execution of an affidavit that the facts contained in it are true, and a certificate which merely recites that the claimant acknowledged the foregoing instrument to be his free act and deed in his capacity of president of plaintiff corporation and the free act and deed of said corporation is statutorily insufficient and renders the lien claim fatally defective. *Bell and Zajicek, Inc. v. Heyward-Robinson Company,* 23 Conn.Sup. 296, 182 A.2d 339 (1962); *Indiana Quarries Co. v. Simms,* 158 Ky. 415, 165 S.W. 422 (1914). See also *State v. Wolfe,* 156 Conn. 199, 239 A.2d 509 (1968).

Thus, we conclude, as did the Alaska Court in *H.A.M.S. Co. v. Electrical Contractors of Alaska,* 563 P.2d 258 (Alaska 1977), that

"[i]n light of these important policy considerations [previously stated] there exists a reasonable basis for the legislature's determination that the significance of filing a lien claim be made clear to the lien claimant through the requirement of verification and the possibility of perjury prosecution for verifying a false lien claim," and

that the corporate acknowledgment affixed to the instant lien claim did not constitute compliance with the verification requirement of our materialmen's lien statute.

■ Our statute, for the purpose of recording the notice of the lien claim, requires that a "subscribed and sworn to" true statement of the claim be filed in the office of the register of deeds within 60 days after the claimant ceases to furnish the materials. In view of the strict construction to be given the statute in determining the claimant's eligibility under it,

the document containing the lien claim, in order to entitle it to be recorded and be evidence of statutory compliance, must be complete in itself, showing on its face that it is a statement properly verified on oath, which only the affixed jurat or certificate by the officer administering the oath can adduce. *Colman v. Goodnow,* 36 Minn. 9, 29 N.W. 338 (1886); *Crockett v. Sampson,* 439 S.W.2d 355, 360 (Tex.Civ.App.1969). Nor can the error in executing an acknowledgment instead of a jurat be cured by proof at the trial that the claim of lien was in fact sworn to before being placed upon file. *Finane v. Las Vegas Hotel & Imp. Co.,* 3 N.M. [Gild.] 411, 5 P. 725 (1885); *Colman v. Goodnow,* supra; *Metcalf v. Prescott,* 10 Mont. 283, 25 P. 1037 (1891); *Reeves v. Kansas Co-op. Wheat Mk't Ass'n,* 136 Kan. 306, 309, 15 P.2d 446, 448 (1932); *Ekstrom United Supply Co. v. Ash Grove Lime & P. C. Co.,* 194 Kan. 634, 400 P.2d 707 (1965).

"The notice in question to which a corporate acknowledgment was subjoined, but no other certificate of oath, was not verified in accordance with the statute. [citations omitted] Verification as used in the statute includes both the actual swearing to the truth of the statements by the subscriber and also the certification thereto by the notary or other officer authorized by law to administer oaths. [citations omitted] The requisites for a valid notice of lien being wholly statutory, there is no power in the courts to amend the notice in the absence of statutory provision. There was no statutory provision applicable here. [citations omitted] The court cannot substitute its order for the requisite statutory notice, it cannot give life to an inert document; especially it cannot do so after the time to file a valid lien has expired." *In re James Passero & Sons,* 237 App.Div. 638, 261 N.Y.S. 661 (1933).

It is true that the statute does not require in express terms that any certificate of the oath be attached to the statement of claim, but such must be implied and the statute has been so construed as evidenced by well-known usages at the bar and among the public. There are practical considerations of substantial importance supporting such a view of the legislative intendment. If a certificate of oath were not a necessary prerequisite to the recording of the lien claim notice and essential to its validity and the fact that the oath had been administered could be shown at trial, such a practice would open the door to abuses, mischiefs, errors and potential fraud difficult to detect. The temptation would be there for witnesses, including justices of the peace, notaries public and attorneys involved in the alleged administration of the oath, to activate doubtful memories to fit their interests. *Cook Borden & Co., Inc. v. Commonwealth,* 293 Mass. 174, 180, 199 N.E. 551 (1936). But see *J. P. Smith Co. v. Wexler Construction Company,* 353 Mass. 551, 233 N.E.2d 723 (1968).

Our lien statute is designed to protect the rights of the owner as well as to afford security for those performing labor or furnishing labor or materials, i. e. contractors, subcontractors, suppliers and laborers. *Wescott v. Bunker,* 83 Me. 499, 506, 22 A. 388; *Expanded Metal Fire-Proofing Co. v. Delp,* 247 Pa. 337, 93 A. 496 (1915). The requirement that the certificate of oath be filed of record does serve to protect the owner at the initial stage of the lien proceedings against frivolous, untrue, inflated or mistaken claims. Furthermore, in balancing the equities between the parties, to impose strict requirements upon subcontractors to record subscribed and sworn to statements of their lien claims with a certificate of oath certainly would not be unjustified, when one considers that the prime contractor may already have been paid in full by the owner and the subcontractor's lien claim, if allowed, would mean double payment on the part of the owner. Also, consideration should be given to the fact that the subcontractor, in filing the lien claim, may be using an elective pressure tactic without exhausting his remedies against the prime contractor. Owners do not tend to protect themselves; they may naturally assume that suppliers dealing

with the prime contractor will look to the latter for payment.[3]

We have considered the cases of *Dalbey Bros. Lumber Co. v. Crispin,* 234 Iowa 151, 12 N.W.2d 277 (1943) and *Turner v. St. John,* 8 N.D. 245, 78 N.W. 340 (1898), which have taken a position contrary to ours, but they are not persuasive.

In other contexts, courts have viewed the certificate of oath as a necessary adjunct to a verification. See *Hill v. Gilman,* 39 N.H. 88 (1859) (statute requiring chattel mortgage to be sworn); *Benedict v. Peters,* 58 Ohio St. 527, 51 N.E. 37 (1898) (statute requiring statement under oath as to amount of chattel mortgage and that it is just and unpaid); *Bristol v. Buck,* 201 App. Div. 100, 194 N.Y.S. 53 (1922) (petition duly signed and verified); *Kennedy & Parsons Co. v. Schmidt,* 152 Neb. 637, 42 N.W.2d 191 (1950) (action to enforce stockholder's liability); *Lydick v. Chairman of Dallas County Repub. Ex. Com.,* 456 S.W.2d 740 (Tex.Civ. App.1970) (uncertified documents relating to qualifications of relators as voters). Our own Court has ruled similarly in *Holbrook v. State,* 161 Me. 102, 208 A.2d 313 (1965) (verification of amended petition for the writ of habeas corpus); *Charles Cushman Co. v. Mackesy,* 135 Me. 490, 200 A. 505, 118 A.L.R. 148 (1938) (complaint for contempt must be in writing and under oath).

The great majority of the authorities agree that, where the statute provides as in the instant case that the lien shall be dissolved, unless the claimant files for recording in the office of the register of deeds a true statement of the claim, which shall be subscribed and sworn to by the person claiming the lien, or by someone in his behalf, or contains words of similar import, a mere acknowledgment to the effect the subscriber is the claimant or the claimant's agent, and that the instrument which he subscribes is his free act and deed, and, if a corporate claim, that said document is the free act and deed of the corporate claimant,

is insufficient compliance with the requirements of the statute, and the attempted lien is invalid. *Stetson & Post Mill Co. v. McDonald,* 5 Wash. 496, 32 P. 108 (1893); *Indiana Quarries Co. v. Simms,* 158 Ky. 415, 165 S.W. 422 (1914); *Crane & Ordway Co. v. Baatz,* 53 Mont. 438, 164 P. 533 (1917); *In re James Passero & Sons,* 237 App.Div. 638, 261 N.Y.S. 661 (1933); *Home Plumbing and Contracting Company v. Pruitt,* 70 N.M. 182, 372 P.2d 378 (1962); *D. J. Fair Lumber Co. v. Karlin,* 199 Kan. 366, 430 P.2d 222 (1967); *Aetna Glass Corporation v. Mercury Builders, Inc.,* 145 Ind.App. 286, 250 N.E.2d 598 (1969); *Crockett v. Sampson,* 439 S.W.2d 355 (Tex.Civ.App.1969); *Crescent Electric Supply Co. v. Nerison,* 232 N.W.2d 76 (S.D.1975); *Perkins Construction Co. v. Ten-Fifteen Corp.,* 545 S.W.2d 494 (Tex.Civ. App.1976); *H.A.M.S. Co. v. Electrical Contractors of Alaska,* 563 P.2d 258 (Alaska 1977).

The entry will be

Appeal denied.

Judgment affirmed.

POMEROY, WERNICK and ARCHIBALD, JJ., concurring.

WEATHERBEE, J., sat at argument and participated in consultation, but died prior to the preparation of the opinion.

DELAHANTY, J., sat at argument and conference, but did not otherwise participate.

---

**3.** We take notice that the Legislature has ameliorated the position of the owners of residential property by providing enforcement of the lien only to the extent of the balance due by the owner to the person with whom the owner has directly contracted at the time of service of process in the lien action or of the receipt of a previous written notice of lien claim by the owner (P.L.1975, c. 734 (1st special session 1976)), effective July 29, 1976.