Arvah L. LYON

v.

Lawrence DUNN.

Supreme Judicial Court of Maine.

June 8, 1979.

Lipman, Parks, Livingston & Lipman, P. A. by John M. Parks (orally), Bruce R. Livingston, Augusta, for plaintiff.

Smith & Stein by Gordon E. Stein (orally), Hallowell, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

A Superior Court Justice ruled, erroneously as we shall see, that the plaintiff was entitled to enforce a lien on the property of defendant, and ordered the property sold and the proceeds applied in satisfaction of any unpaid portion of the amount for which the lien is claimed. The defendant seasonably appealed.

We sustain the appeal.

The case was submitted to a Superior Court Justice sitting without a jury, upon stipulated facts.

The stipulation establishes, among other things, that the plaintiff began work on the project on October 19, 1974. The last services were performed on July 30, 1975. For some time prior to October 19, 1974 and until December 6, 1974, defendant Dunn was the sole owner of the premises. On December 6, the premises were conveyed by Dunn to Patrick J. Kimball, Inc. (Kimball). It is agreed that although Dunn, the owner of the property, was aware the work was being done by Lyon and consented thereto, the work was actually performed as a result of an oral contract entered into between the plaintiff and an agent of Patrick J. Kimball, Inc.

Simultaneously with the conveyance by Dunn, on December 6, 1974, of title to the premises to Kimball, Kimball executed and

delivered to Dunn a purchase money mortgage covering said premises. Some time after the conveyance of December 6, 1974, Kimball was adjudicated a bankrupt.

On July 9, 1976, the bankruptcy trustee, with leave of the bankruptcy Court, disclaimed any interest in the real estate of the corporation which it had acquired from Dunn. Thereafter on July 28, 1976, Kimball executed and delivered a quit-claim deed to Dunn of all its title in the property acquired from Dunn. Notwithstanding that conveyance, defendant has neither foreclosed nor discharged the outstanding mortgage.

█ Apparently due to Kimball's financial condition, the debt owed plaintiff for his services went unpaid. An action was therefore filed in the Superior Court, Kennebec County, pursuant to 10 M.R.S.A. § 3255, seeking to enforce plaintiff's lien on the property. Plaintiff concedes, however, that no notice was ever filed pursuant to 10 M.R.S.A. § 3253. Defendant now claims that such a failure precludes plaintiff from asserting a lien on the property.

We agree.

█ It is well established in this jurisdiction that a mechanic's lien, wholly statutory in origin, arises from the moment the first materials or services are furnished. *See Pineland Lumber Co. v. Robinson,* Me., 382 A.2d 33, 36 (1978); *Withan v. Wing,* 108 Me. 364, 373, 81 A. 100, 104 (1911). At that point, however, the lien is merely inchoate in nature, and will not ripen absent further action by the materialman. In those situations where the services are provided pursuant to a contract *with the owner* of the property, the lien ripens through the commencement of an action as provided by 10 M.R.S.A. § 3255. Where, however, services are furnished not as a result of a contract with the owner, but rather merely with his *consent,* the lien will not ripen, *"but* 'shall be dissolved,' *unless the materialman records his lien-claim statement* [as] *provided by 10 M.R.S.A. § 3253 . . . within the time fixed therein and unless he brings his action to enforce his lien within the time*

*fixed by 10 M.R.S.A. § 3255."* (emphasis added.) *Pineland Lumber Co. v. Robinson, supra* 382 A.2d at 36.

In determining that plaintiff's failure to file any notice pursuant to § 3253 was not fatal to his action, the Superior Court Justice reasoned as follows:

*The first issue is whether failure to file a lien certificate preserving the line* [sic] *under 10 M.R.S.A. § 3253 is fatal to the Plaintiff's cause of action. Such a certificate must be filed within ninety days of the completion of the work, but is not required if the work is performed pursuant to a contract with the owner. Ninety days after completion of the work, Kimball was the owner of the property. Therefore, a certificate was not required because Kimball had contracted to have the work done.* [Emphasis added].

Such reasoning erroneously assumes that *"ownership",* for purposes of § 3253, is determined as of the expiration of the filing period, rather than when the lien first arises.

█ As noted above, a mechanic's lien has its onset from the moment labor or materials are first provided. The lien, however, can only attach to that interest the contracting party has in the property to which the services relate. 10 M.R.S.A. § 3251. If that party has no interest in the land or its improvements, or has failed to procure the owner's consent, the lien has nothing to attach to and becomes a nullity. *See* 10 *Thompson on Real Property,* § 5192 (1957); *see also, Society Linnea v. Wilbois,* 253 Iowa 953, 113 N.W.2d 603, 603 (1962). It is, therefore, incumbent upon a materialman seeking to establish a lien, to determine the extent of the contracting party's interest in the land.

█ Faced with the manner in which a lien arises and the extent of the interest to which it attaches, as well as the fact that the lien is an encumbrance on the alienability of such interest, *cf., Pineland Lumber Co. v. Robinson, supra,* 382 A.2d at 37, it is only logical to conclude that *"ownership",* within the meaning of § 3253, refers to ownership at *the time services are first*

*provided,* not at the time notice must be given, a point long after the viability of the lien has been determined.

Our conclusion is supported by the presence of § 3252 in the statutory scheme encompassing mechanics' liens. That section allows a consenting owner to nonetheless disavow any responsibility for the lien by providing the materialman with notice to that effect in advance of the work being done. By the very terms of the statute, *"owner"* must relate to ownership at the *time work giving rise to the lien is commenced. Cf., E. Corey Co. v. H. P. Cummings Construction Co.,* 118 Me. 34, 105 A. 405 (1919). We see no reason, in light of § 3253's specific reference to § 3252, to attribute any other meaning to the same term as it appears in § 3253.

We hold, as have other jurisdictions, *see e. g., Staley v. Woodruff,* 257 Ala. 571, 60 So.2d 384 (1952), that for the purposes of determining when § 3253 notice must be given, *"ownership"* means ownership at the time the services giving rise to the lien are first rendered.

A review of the development of the statutory lien law leads us to conclude that although it is clear the various notice provisions found in the statutes have had as their purpose to provide owners and prospective purchasers with notice of the lien, we have difficulty in seeing how the notice provision completely fulfills its function.

The last sentence of 10 M.R.S.A. § 3253 reads as follows:

> *This section shall not apply where the labor, materials or services are furnished by a contract with the owner of the property affected.*

This sentence was first introduced into the statutory scheme encompassing mechanics' liens by P.L. 1899, c. 84, amending R.S. 1883, c. 91, § 32. The Legislative Record of that session of the Legislature is silent as to the purpose underlying the amendment or the construction to be given its various terms.

Maine's mechanics' lien law finds its roots in the laws of Massachusetts. It first appeared in the Maine statutes in 1821, and required a written contract with the propri-

etor, which was to be recorded in the local registry of deeds. The lien itself was only valid for six months from the date the last installment fell due.

The public laws of 1837, *i. e.* P.L. 1837, c. 273, § 1 *et seq.,* dramatically altered the requirements for the creation and preservation of a mechanic's lien. Unlike the 1821 version, the 1837 statute dropped the specific requirement that the contract be made with the land's proprietor. It added the requirement, however, that the contract be recorded within ten days of the date of the contract. Finally, the period in which the lien continued was reduced from six months to 90 days, and attachment was required within that period.

The fluctuations continued with the revised statutes of 1841 (R.S. 1841, c. 125, § 37). The requirement that the contract be with the owner, or one who had contracted with the owner, was added, reflecting the 1821 provision that the contract be with the proprietor. Dropped, however, was the entire recording section of the 1837 version. The 90-day requirements were left intact.

The revised statutes of 1857 (R.S. 1857, c. 91, § 16) virtually mirrored the 1841 version, with the sole exception being the disappearance of the requirement that attachment be within 90 days of the date payment was due.

The status quo, however, was short lived. The public laws of 1868 (P.L. 1868, c. 207), for all intents and purposes, completely rewrote the mechanics' lien law in Maine. No longer was a contract *with the owner* required; the mere *consent* of the owner was sufficient. Although the 90-day requirements, *i. e.* lien continues for 90 days and suit to enforce it must commence within that time, reappear *in toto,* the new statute also added the requirement that *"such lien shall be dissolved"* unless the lienor filed notice, within 30 days after finishing his labors, with the town clerk regarding the lien. Moreover, the lienor had to inform the owner of the subject property of the intent to claim a lien, if the owner was not the purchaser or employer (*i. e.,* a

consenting owner). Finally, the provision allowing a consenting owner to disavow the lien (now found in § 3252) was added. These changes were fully reflected in the revised statutes of 1871 (R.S. 1871, c. 91 § 27), and remained in effect through the 1883 revision, save the requirement that a lienor notify a consenting owner of the intent to claim a lien.

By 1903, (R.S. 1903, c. 93, § 29), the section now confronting us, *i. e.*, the last sentence of § 3253, had been added by P.L. 1899, c. 84. Also added was an amendment lengthening the period to file notice to 40 days. Of interest, and import, was the further addition of a provision allowing enforcement of the lien through the filing of a bill in equity, filed within 90 days of the last date of labor. That bill, however, had to contain a specific allegation, if labor was provided solely with the consent of the owner, that the notice provision had been complied with.

The 1916 revision altered its immediate predecessor only by enlarging the filing period for notice to 60 days. As altered, that version remained intact until the 1954 revision. (*See* intervening "*revisions*": R.S. 1930, c. 105, § 29; R.S. 1944, c. 164, § 34). The 1954 version merely added architects and engineers to the class of potential lienors. In essence, the present version (1964 as amended), save the disappearance of the equity provision and the enlargement of time for filing notice (90 days) and commencing an action (120 days), is generally the same version as that controlling in 1903.

The quick review of the statutory history of our mechanics' lien provisions reveals the following: first, the requirements for both the creation of the lien and for its enforcement have grown more liberal over time. For example, a lien arises either pursuant to a contract with the owner or by his consent. In addition, the time provisions have gone from ten days (file the contract) to 90 days to file notice, and from 90 to 120 days for commencement of action. Second, that despite such a trend, there has always been, save the period between 1841 and 1868, some sort of filing or notice require-

ment. That requirement presently applies, and has so since 1868, only to liens arising due to the consent of the owner. The cases addressing the various notice provisions have all held that the purpose of such a provision is to provide owners and prospective purchasers with notice of the lien. *See Conner v. Lewis*, 16 Me. 268 (1839); *Frost v. Ilsley*, 54 Me. 345 (1866); *Ricker v. Joy*, 72 Me. 106 (1881); *Durling v. Gould*, 83 Me. 134, 21 A. 833 (1890); *Dole v. Auditorium*, 94 Me. 532, 48 A. 115 (1901). Accepting that the case law cited above correctly interprets the purpose of the notice provision, it is difficult to discern how that purpose has been served in view of the statutory provisions as to the time when notice must be filed. For example, under the existing statute, 10 M.R.S.A. § 3251, *et seq.*, when the lien arises pursuant to an owner's consent, notice must be filed within 90 days of the last date labor or materials were furnished. It follows that within the 90-day period the owner could transfer the property to an unsuspecting purchaser, who would take title subject to the lien. Moreover, if the lien arises pursuant to a contract with the owner, the notice provision is dispensed with, allowing an owner 120 days within which to convey his property to an unwary buyer.

When applied to the case now before us, it is clear that defendant, and not Kimball, was the owner on October 19, 1974, the date plaintiff commenced his survey and road work. Because labor, materials or services were not furnished "*by contract with the owner,*" plaintiff, by the terms of § 3253, was required to file his lien-claim in the Kennebec County Registry of Deeds. We now turn to whether his failure to file denied him any recourse against defendant on the lien.

Plaintiff argues that notwithstanding his failure to file notice pursuant to § 3253, the commencement of the present action pursuant to § 3255 preserved his lien. We agree with plaintiff that § 3255 is the appropriate section for preserving and enforcing a lien. We disagree, however, that his failure to file under § 3253 has no effect on his action.

The introductory language of § 3253 mandates that a lien such as plaintiff's *"shall be dissolved"* absent the requisite filing. To read that language in any other manner than to state that the lien ceases to exist would be to render § 3253 superfluous.

§ 3253 is not an alternative method of establishing a lien. It is a preliminary, but essential, step in the preservation of a mechanic's lien. Where services are provid-ed only with the consent of the owner, a materialman must first file his notice *and then* he may preserve and enforce the lien by complying with section 3255. *See Pineland Lumber Co. v. Robinson, supra*; *Morin v. H. W. Maxim Co.*, 146 Me. 421, 82 A.2d 789 (1952); *Marshall v. Mathieu*, 143 Me. 167, 57 A.2d 400 (1948). When plaintiff neglected to file his notice, his lien ceased to exist. He was left with nothing to preserve or enforce. He cannot now prevail in an action upon the lien.

In view of our disposition of this issue, we need not reach other issues raised by the parties.

The entry is:

Appeal sustained.

Judgment vacated.

Case remanded to the Superior Court to enter Judgment for defendant.

Defendant to receive costs as prevailing party.

DELAHANTY, J., did not sit.