In re TRIPLE A SUGAR
CORPORATION, Debtor.

TRIPLE A SUGAR CORPORATION,
Plaintiff,

v.

STANDARD ELECTRIC COMPANY
et al., Defendants.

Bankruptcy No. BK–77–63ND.
Adv. No. 78–62.

United States Bankruptcy Court,
D. Maine.

March 18, 1983.

George Marcus, Portland, Maine, for plaintiff.

Glen Porter, Bangor, Maine, for Chicago Bridge & Iron.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

This is a continuation of a dispute involving a lien on property of the debtor claimed by Chicago Bridge and Iron Co. under Maine's mechanics' lien statute. 10 M.R. S.A. § 3251 et seq. In an earlier phase Bankruptcy Judge Cyr[1] ruled that two huge chemical storage tanks erected by Chicago Bridge for Maine Sugar Industries on land owned by Aroostook Development Corporation and later acquired by the debtor, Triple A Sugar Corporation, became fixtures upon their physical annexation to the land. He further ruled that an inchoate lien in favor of Chicago Bridge attached to the tanks and to Maine Sugar's leasehold interest in the land from the moment labor or materials were first provided. *Triple A Sugar Corporation v. Standard Electric Company (In re Triple A Sugar Corporation)*, 13 B.R. 969 (Bkrtcy.D.Me.1981).

---

1. Now a United States District Court Judge.

The issue now before this court, on debtor's motion for summary judgment, is whether Chicago Bridge properly perfected its inchoate lien. The court concludes that it did not.

The material facts are not in dispute. Chicago Bridge contracted with Maine Sugar for the prefabrication and erection of the storage tanks at the Maine Sugar refinery site in Easton, Maine. The tanks were assembled between December 16, 1968, and April 1969. A lien certificate against the tanks was filed by Chicago Bridge on June 6, 1969,[2] and a complaint to preserve and enforce its lien was filed in the Maine Superior Court on June 25, 1969. Both the lien certificate and the complaint asserted a lien against the tanks and the land on which they were located and named only Maine Sugar as the owner of both. The complaint was amended on October 3, 1972 to include additional parties.

At all times during this period Maine Sugar had only a leasehold interest in the land on which the tanks were erected. Maine Sugar had conveyed the land to Aroostook Development Corporation in July 1965 and leased it back for a twenty-five year term. Aroostook Development mortgaged the property to First National Bank of Boston, the United States Small Business Administration and Northern National Bank, Trustee, in July of 1965 and again in April 1969. Subsequently Maine Sugar experienced financial difficulties which caused Aroostook Development to default on its mortgage and First National Bank of Boston foreclosed the mortgage. In October 1972 the Bank, by quitclaim deed, released its interest in the land to the Maine Guarantee Authority [MGA], a guarantor of the related promissory note. The MGA eventually conveyed the land and buildings to Triple A by Quitclaim Deed in April 1975.

MGA became a mortgagee of Triple A. Junior mortgagees, K. Palzenhofer, Inc. and ACLI International, Inc., obtained their interest in the land in January 1976. After encountering its own financial difficulties Triple A sought relief in this court under Chapter XI of the Bankruptcy Act.

Triple A argues that Chicago Bridge, in its attempts to perfect its lien, failed to conform to the statutory requisites prescribed in 10 M.R.S.A. § 3251 et seq. and that Chicago Bridge's failure resulted in disolution of any inchoate lien it may have had.

Chicago Bridge contends that Judge Cyr's decision that its contract with the owner of the tanks permitted attachment of the inchoate lien, absolved it from application of 10 M.R.S.A. § 3253 and is precedent for finding it need not comply with its provisions. Such a conclusion is not supported by Judge Cyr's decision or the precise language of the statutes involved.

Judge Cyr's decision dealt with the "establishment" of the lien and was based upon 10 M.R.S.A. § 3251.[3] We are now concerned with "preservation" and "enforcement" of the inchoate lien.

Once the lien is established it is inchoate only;

> and where there is no privity of contract between the owner and the materialman, such lien will not ripen, but 'shall be dissolved', unless the materialman records his lien-claim statement *in the form* provided by 10 M.R.S.A. § 3253 in the office of the register of deeds.... (emphasis in original).

*Pineland Lumber Co. v. Robinson*, 382 A.2d 33, 36 (Me.1978).

Chicago Bridge concedes that it did not file a lien-claim statement "in the form

---

**2.** The lien statement was defective because it was not under oath as required by 10 M.R.S.A. § 3253.

**3.** 10 M.R.S.A. § 3251 provides, as pertinent: Whoever performs labor or furnishes labor or materials ... used in erecting, ... a house, building or appurtenances ... by virtue of a contract with or by consent of the owner, has a lien thereon and on the land on which it stands and on any interest such owner has in the same, to secure payment thereof, with costs. If the owner of the building has no legal interest in the land on which the building is erected or to which it is moved, the lien attaches to the building....

provided by 10 M.R.S.A. § 3253."[4] It argues, however, that the section does not apply to it because its "labor, materials or services" were furnished by a contract with the owner (Maine Sugar) of the property affected (the tanks).

Its argument must fail, because under established Maine law

if one erects a permanent building, like a dwelling house, on the land of another, voluntarily and without any contract, express or implied, with the land-owner that the building shall not become part of the realty but shall remain personal property, it becomes part of the realty and belongs to the owner of the soil.

*Hinkley & Egery Iron Co. v. Black,* 70 Me. 473, 481 (1880); *see also Skillin v. Moore,* 79 Me. 554, 11 A. 603 (1887); *Lapham v. Norton,* 71 Me. 83 (1880); *Hemenway v. Cutler,* 51 Me. 407 (1863).

It is clear then that the owner of the property affected, within the meaning and intent of section 3253, was Aroostook Development Corporation, the owner of the land. Chicago Bridge concedes that it had no contract with Aroostook Development. This means that it was required to file a lien statement "subscribed and sworn to" as provided for by 10 M.R.S.A. § 3253. Its failure to do so is fatal to its lien. Its lien was "dissolved" upon its failure to comply with section 3253. *Pineland Lumber Co. v. Robinson, supra, Lyon v. Dunn,* 402 A.2d 461 (Me.1979).

An appropriate order will be entered.

**4.** 10 M.R.S.A. § 3253 provides, as pertinent: The lien mentioned in section 3252 shall be dissolved, unless the claimant, within 90 days after he ceases to labor, furnish materials or perform services, files in the office of the register of deeds in the county or registry district in which such building, wharf or pier is situated a true statement of the amount due him with all just credits given, together with a description of the property intended to be covered by the lien sufficiently accurate to identify it, and the names of the owners, if known; which shall be subscribed and sworn to by the person claiming the lien, or by someone in his behalf ... This section shall not apply where the labor, materials or services are furnished by a contract with the owner of the property affected.