STATE OF MAINE                          SUPERIOR COURT
LINCOLN, ss.                            CIVIL ACTION
                                        DOCKET NO. CV-15-36

ROCKINGHAM ELECTRICAL SUPPLY   )
COMPANY, INC.,                 )
                               )
         Plaintiff             )        ORDER ON
                               )        DEFENDANT'S MOTION FOR
                               )        SUMMARY JUDGMENT
v.                             )        AND FOR SANCTIONS
                               )
WRIGHT-RYAN CONSTRUCTION, INC., )
                               )
         Defendant             )
                               )

Defendant Wright-Ryan Construction, Inc. ("Wright-Ryan") moves for summary judgment on the sole count of the amended complaint made by Plaintiff Rockingham Electrical Supply Company, Inc. ("Rockingham") to enforce a mechanic's lien. *See* 10 M.R.S. § 3251, et seq. (2015); M.R. Civ. P. 56. Also before the Court is Wright-Ryan's motion for sanctions against Rockingham. *See* M.R. Civ. P. 11. For the following reasons, Wright-Ryan's motion for summary judgment is denied, Rockingham's amended complaint is dismissed with prejudice, and the Court will consider further arguments on possible sanctions.

I.     Factual and Procedural Background

Wright-Ryan was the general contractor under a contract with the Trustees of Lincoln Academy (the "Owner") to complete work at the Owner's property in Newcastle, Maine (the "Property"). (Def.'s S.M.F. ¶ 1.) Wright-Ryan entered into a subcontract with TRT Electric, Inc. ("TRT") to complete work and improvements at the Property. (*Id.* ¶ 2.)

Rockingham claims that, pursuant to a contract, it provided TRT goods and materials that were related to improvements at the Property. (*Id.* ¶¶ 3, 4.) Rockingham claims that TRT owes it $43,308.59 for those goods and materials. (*Id.* ¶ 5.) Rockingham did not have a contract with either Wright-Ryan or the Owner. (*Id.* ¶¶ 6, 7.)

On or about August 10, 2015, Rockingham filed a "CERTIFICATE OF MECHANIC'S LIEN and STATEMENT OF LIEN CLAIM" (the "Lien Certificate") with the Lincoln County Registry of Deeds. (*Id.* ¶¶ 9, 10.) There is no other lien certificate recorded by Rockingham against the Property. (*Id.* ¶ 12.) The final paragraph in the body of the Lien Certificate reads as follows:

> IN WITNESS WHEREOF, Rockingham Electrical Supply Company, Inc. has caused its name to be hereunto affixed and this Certificate to be signed and sworn this 3rd day of August, 2015.

(Pl.'s Opp. S.M.F. ¶ 11 (qualified on other grounds).) The notary attestation on the Lien Certificate reads as follows:

> Personally appeared, Karen Lane, duly authorized, known to me, or satisfactorily proven to be the person whose name is subscribed to the foregoing instrument, and acknowledged that s/he executed the same for purposes therein contained in his/her capacity as Credit Manager of the Company.

(*Id.* (qualified on other grounds).)

On August 13, 2015, counsel for Wright-Ryan emailed counsel for Rockingham "seeking to negotiate the voluntary bonding off of Rockingham's lien." (Def.'s S.M.F. ¶ 15.) In the body of the email, counsel for Wright-Ryan wrote, "Please let me know Rockingham Electric's position regarding this request and, if they are amendable to the agreement, if you have any changes to it." (Def.'s Opp. to Pl.'s S. Add'l M.F. ¶ 35.) Counsel for Wright-Ryan attached to the email (1) a proposed agreement entitled "Agreement to Discharge of Lien by Bond as Substitute Security" with signature lines

2

for both Wright-Ryan and Rockingham, (2) a "Discharge of Lien" with a signature line for Rockingham, and (3) a copy of the fully executed "Release of Lien Bond" that Wright-Ryan proposed to deliver to Rockingham if an agreement was reached. (Def.'s S.M.F. ¶ 16.)

Rockingham asserts that it accepted Wright-Ryan's August 13 offer on September 18, 2015, when counsel for Rockingham executed the proposed agreement and lien discharge and returned the two documents to counsel for Wright-Ryan. (Pl.'s S. Add'l M.F. ¶ 39 (denied).) Wright-Ryan asserts that Rockingham did not accept Wright-Ryan's offer, but rather "offered a new draft agreement . . . as a counteroffer."(Def.'s S.M.F. ¶¶ 18, 19 (both denied).) However, Wright-Ryan effectively admits that the "new draft agreement" is identical to the proposed agreement attached to the August 13 email. (Pl.'s S. Add'l M.F. ¶ 36 (qualified on other grounds).) Confusingly, Wright-Ryan also asserts that the August 13 email to which Rockingham allegedly replied with a counteroffer was not an offer at all, "but at best a solicitation for an offer." (Def.'s Opp. to Pl.'s S. Add'l M.F. ¶ 35.)

On October 1, 2015, Wright-Ryan proposed a modification to the proposed agreement that Rockingham had executed. (Def.'s S.M.F. ¶ 24.) Rockingham rejected the proposed modification. (Id. ¶ 25.) Wright-Ryan has not counter-executed the proposed agreement, and the Lien Certificate has not been discharged or vacated. (Id. ¶¶ 21, 29.) In addition, no party has petitioned the Court under 10 M.R.S.A. § 3263 to release the lien on the Property or to accept a bond as alternate security for the lien on the Property. (Id. ¶¶ 32, 33.)

Rockingham brought its initial complaint to enforce the lien, dated September 18, 2015, against TRT, TRT's president, and Wright-Ryan. By order dated April 11, 2016, the Court ordered Rockingham to file within ten days an amended complaint "stating

3

specifically in each count the relief sought, what party or parties the relief is sought against, and the factual basis for such claims." On April 21, 2016, Rockingham filed the amended complaint against Wright-Ryan.

## II. Motion for Summary Judgment.

Wright-Ryan moves for summary judgment on the sole count of the amended complaint.

### a. Standard of Review.

Summary judgment is appropriate if, based on the parties' statements of material facts and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Id.* (citations omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

However, the Court cannot reach the merits of a matter if it has no jurisdiction over the subject matter at issue. *Tomer v. Me. Human Rights Comm'n*, 2008 ME 190, ¶ 15, 962 A.2d 335. Although Wright-Ryan does not move to dismiss for lack of subject matter jurisdiction, the court must dismiss an action if it appears that the court has no jurisdiction over the subject matter at issue therein. M.R. Civ. P. 12(h)(3). *See also Jensen v. Jensen*, 2015 ME 105, ¶ 11, 121 A.3d 809 (quoting *Foley v. Ziegler*, 2005 ME 117, ¶ 8, 887 A.2d 36) ("the issue of a court's authority may be raised *sua sponte* at any point.").

4

b. Discussion.

Wright-Ryan argues that the Lien Certificate is invalid because it does not contain a proper jurat.[1] (Def.'s Mot. Summ. J. 8 (citing *Pineland Lumber Co. v. Robinson*, 382 A.2d 33, 38 (Me. 1978)).) Rockingham admits that the Lien Certificate contains only an acknowledgement by the notary public, not a jurat, but argues that the Lien Certificate is sufficient nonetheless. (Def.'s S.M.F. ¶ 11; Pl.'s Opp. to Def.'s S.M.F. ¶ 11.)

Under Maine statutory law, a claimant who furnishes materials used for the improvement of a building has a lien on the building property to secure payment for such materials, provided that the materials were furnished pursuant to a contract with the property owner or with the property owner's consent. 10 M.R.S. § 3251. However, that lien is dissolved unless the claimant properly files a lien statement within 90 days after furnishing the materials. 10 M.R.S. § 3253(1)(A). The lien statement "*must be subscribed and sworn to* by the person claiming the lien, or by someone on the claimant's behalf." *Id*. (emphasis added).

The court generally interprets the mechanic's liens statutes liberally to effectuate the dual purpose of affording security to claimants and providing notice to owners and purchasers. *HCI Corp. v. Voikos Constr. Co.*, 581 A.2d 795, 798 (Me. 1990). However, this liberal statutory construction only applies when no express statutory command has been disobeyed (i.e. when the claimant is within the statute). *Island Terrace Condo. Owners Ass'n v. Coastal Constr. & Landscaping, Inc.*, No. RE-02-090, 2005 Me. Super LEXIS 18, at *5-6 (Jan. 10, 2005) (citing *Pineland Lumber Co. v. Robinson*, 382 A.2d 33, 36 (Me. 1978); *Twin Island Dev. Corp. v. Winchester*, 512 A.2d 319, 323 (Me. 1986); *Combustion Eng'g v. Miller Hydro Group*, 577 A.2d 1186, 1188 (Me. 1990)). In order to be sufficient

---

[1] Because the Court is dismissing this action, the alternative grounds offered by the Defendant are not addressed in this order.

5

under the statute, a lien statement must be subscribed and sworn, "which only the affixed jurat or certificate by the officer administrating the oath can adduce." *Pineland Lumber Co.*, 382 A.2d at 38.

A claimant was not within the statute, therefore, when the notary subscription on the claimant's lien statement was a "mere acknowledgement" that the subscriber was the claimant or the claimant's agent and that the instrument was the claimant's free act and deed. *Id.* at 39. Because the claimant was not within the statute, the attempted lien was invalid and the trial court was correct to dismiss the claimant's suit. *Id.*

Rockingham attempts to distinguish *Pineland* and argues that the Lien Certificate is sufficient despite the lack of a jurat because the body of the Lien Certificate contains language stating that "IN WITNESS WHEREOF, Rockingham . . . caused its name to be hereunto affixed and this Certificate to be signed and sworn . . . ." (Pl.'s Opp. to Def.'s Mot. Summ. J. 5.) However, the Court in *Pineland* held that the lien oath requirement was not satisfied even when the body of the lien statement contained language stating that the claimant "certif[ied] on oath" that it was a true statement. *Pineland Lumber Co.*, 382 A.2d at 35. The language "to be signed and sworn" sounds even less like an oath of truth than the alleged oath statement in *Pineland. Rockingham Elec. Supply Co. v. TRT Elec. Inc.*, CUMSC-CV-2015-270 at *7 (Me. Super. Ct., Cum. Cty., Sep. 21, 2016).

Therefore, even viewing this evidence in the light most favorable to Rockingham, Rockingham has failed to demonstrate a genuine dispute as to whether the Lien Certificate satisfied the statutory oath requirement. Even if Rockingham did include the word "sworn" in the last paragraph of the body of the Lien Certificate text, as a matter of law this does not serve as a substitute for a the oath of truth that is statutorily required to be in the jurat of a valid mechanic's lien. *Rockingham Elec. Supply Co. v. TRT Elec. Inc.*, CUMSC-CV-2015-270 at *7 (Me. Super. Ct., Cum. Cty., Sep. 21, 2016). *See also*

6

*Pineland Lumber Co.*, 382 A.2d at 35.

Rockingham argues that a genuine issue of material fact exists as to the parties' intention to be bound to the proposed agreement to discharge the lien and substitute a bond for security. (Pl.'s Opp. to Def.'s Mot. Summ. J. 4.) However, Rockingham admits that Wright-Ryan did not execute the proposed agreement (Def.'s S.M.F. ¶ 21), and that the Lien Certificate has not been discharged (*Id.* ¶¶ 23, 29). Furthermore, Rockingham offers no evidence that Wright-Ryan ever tendered the proposed bond or that the proposed bond has been posted.

Even if the proposed agreement were binding, and even if the bond had been posted, however, Rockingham could not prevail on the facts presented. Pursuant to the language of the proposed agreement, Rockingham "must still prove the bases for its Lien Claim in the court action." (Burns Aff. Ex. 3 2; Mulligan Aff. Ex. B 2.) Likewise, pursuant to the proposed bond, "[i]n the event of any court of competent jurisdiction should enter judgment on the mechanic's lien claim based on 10 M.R.S.A. Sec. 3251 et seq. . . . this bond will be honored to the extent of such judgment." (Def.'s S.M.F. ¶ 17 (alterations in original).) As discussed above, the Lien Certificate is insufficient, meaning that Rockingham has failed to prove the bases for the Lien Claim and this action will not result in a favorable judgment on which Rockingham could collect on the proposed bond. *See Rockingham Elec. Supply Co. v. TRT Elec. Inc.*, CUMSC-CV-2015-270 at *7 (Me. Super. Ct., Cum. Cty., Sep. 21, 2016). More importantly, without a valid lien statement, the Court has no jurisdiction to consider Rockingham's motion to enforce. *See Pineland Lumber Co.*, 382 A.2d at 35, 39.

III.    Motion for Sanctions.

Wright-Ryan moves for sanctions against Rockingham pursuant to M.R. Civ. P. 11.

a. Standard of Review.

Pursuant to Rule 11, the signature of an attorney on a pleading or motion constitutes a representation by the signer that the signer that "to the best of the signer's knowledge, information, and belief there is good ground to support it." M.R. Civ. P. 11(a). If a pleading or motion is signed with intent to defeat the purpose of Rule 11, the court, upon motion or upon its own initiative, may impose upon the signer, upon the represented party, or upon both, an appropriate sanction. *Id.* This sanction may include an order to pay to the opposing party reasonable expenses, including reasonable attorney's fees. *Id.*

b. Discussion.

Wright-Ryan argues that sanctions are in order against Rockingham in part because counsel for Wright-Ryan informed counsel for Rockingham that the Lien Certificate was fatally flawed for lack of jurat prior to Rockingham filing its amended complaint in this matter. (Def.'s Mot. Summ. J. 14; Def.'s S.M.F. ¶ 13 (admitted).) Specifically, in his March 11, 2016 email to counsel for Rockingham, counsel for Wright-Ryan wrote, "[h]ere is the case that, we think, means your lien claim cannot survive. There are other reasons that it cannot survive, but perhaps this one is the simplest." (Burns. Aff. Ex. 1 1.) A copy of *Pineland Lumber Co. v. Robinson*, 382 A.2d 33, 38 (Me. 1978), was attached to the email. *Id.* Although the Court agrees with counsel for Wright-Ryan that the Lien Certificate is insufficient under *Pineland*, the Court does not see fit to order sanctions simply because counsel for Rockingham sought to distinguish the lien

8

statement in *Pineland* from the one in this case. The two statements are not identical and there was a genuine issue of law as to whether *Pineland* applied in this case.

Wright-Ryan also argues that sanctions are in order against Rockingham because in its amended complaint and in its earlier objection to Wright-Ryan's motion to dismiss the original complaint, "Rockingham asks this Court to effectively recognize and enforce the unexecuted agreement against Wright-Ryan." (Def.'s Mot. Summ. J. 14-15.) While there is no dispute that Wright-Ryan never counter-executed the proposed agreement, the Court takes issue with the fact that Wright-Ryan, in its Statement of Material Facts, mischaracterized the proposed agreement executed by Rockingham by referring to it as a "new draft agreement." (Def.'s S.M.F. ¶¶ 19, 20.) In fact, as evidenced by the record, and as effectively admitted by Wright-Ryan, the language of "new draft agreement" that Rockingham executed was *identical* to the language of the "draft agreement" that counsel for Wright-Ryan provided to counsel for Rockingham. (Burns Aff. Ex. 3 1; Pl.'s Reply to Def.'s S.M.F. ¶¶ 19, 20; Pl.'s S. Add'l M.F. ¶ 36; Mulligan Aff. Ex. B 2; Def.'s Reply to Pl.'s S. Add'l M.F. ¶ 36.) The Court also takes issue with the apparent discord between Wright-Ryan's initial characterization of its counsel's August 13, 2015 email to counsel for Rockingham as an "offer" to which Rockingham replied with a "counteroffer" (Def.'s S.M.F. ¶¶ 18, 19) and its later characterization of the August 13 email as "not an offer but at best a solicitation for an offer" (Def.'s Reply to Pl.'s S. Add'l M. F. ¶ 35), to which counsel for Rockingham replied with an "offer" (Def.'s Reply to Pl.'s Opp. to Def.'s Mot. Summ. J. 1 n.2). Given the ambiguity created by both parties with regard to the proposed agreement, the Court does not see fit to order sanctions against Rockingham in this regard.

Finally, although it is not explicitly included in Wright-Ryan's argument for sanctions (Def.'s Mot. Summ. J. 14-15), Wright-Ryan notes elsewhere (*id.* 1, 2, 6, 12, 13,

9

14, 15) that despite Rockingham's assertions to the Court, the Lien Certificate has not been discharged and the proposed bond has not been posted. In the amended complaint, Rockingham alleges that the Lien Certificate "was discharged by [Rockingham] on or about September 18, 2015 upon the posting of a bond by Wright[-Ryan] pursuant to 10 MRSA §3263." (Pl.'s Am. Compl. ¶ 10.) Rockingham adds, "[a] copy of said bond is attached hereto as Exhibit B." (*Id*.) Further down, Rockingham alleges that Wright-Ryan "has posted a bond as contemplated in 10 MRSA §3263 to secure the release of the lien from [Rockingham]." (*Id*. ¶ 14.) In its Statement of Additional Material Facts, Rockingham states that it "tendered the Discharge of Lien" to Wright-Ryan on or about September 18, 2016. (Pl.'s S. Add'l M.F. ¶ 39 (denied on other grounds).) However, Rockingham also admits that Wright-Ryan never recorded the Discharge of Lien (Def.'s S.M.F. ¶ 23), the Lien Certificate was not discharged or vacated (*id*. ¶ 29), and no party has petitioned the Court under 10 M.R.S.A. § 3263 to release the Lien Certificate or accept a bond as alternate security (Def.'s S.M.F. ¶¶ 32, 33). Rockingham states that it commenced this action on September 18, 2015, in reliance on what it considered an agreement to discharge the lien. (Pl.'s S. Add'l M.F. ¶ 39.) However, even if that were true, Rockingham certainly knew or should have known that Lien Certificate had not been discharged and the bond had not been posted by the time Rockingham filed its amended complaint dated April 20, 2016.

Given Rockingham's clear misrepresentation to the Court that the Lien Certificate had been discharged and a bond had been posted prior to the date of the amended complaint, the Court is inclined to award some measure of sanctions against Rockingham.

IV.    Conclusion.

In light of the foregoing, the Defendant's motion for summary judgment as to the sole count of the amended complaint is denied and the Amended Complaint is dismissed with prejudice.

With regard to the Defendant's motion for sanctions, the Defendant will have 21 days from the date of this Order to submit an affidavit of attorney's fees. Plaintiff will have 21 days from the date of Defendant's motion to object to the amount of attorney's fees and costs and to argue why sanctions should not be imposed. Defendant will be allowed 10 days to respond.

The Clerk is directed to enter this Order and Decision on the civil docket by reference pursuant to M.R. Civ. P. 79(a).

Date: February 14, 2017

Daniel I. Billings
Justice, Maine Superior Court

11