2008 ME 2

**Robert G. CONRAD**

v.

**Sheryl V. SWAN.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 17, 2007.
Decided: Jan. 8, 2008.

---

Sarah L. Glynn, Esq., Oxford Hill Law, South Paris, ME, for the appellant.

Michael L. Dubois, Esq., Lewiston, ME, for the appellee.

\* Justice Susan Calkins participated in the initial conference but retired before this opinion

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.\*

Majority: SAUFLEY, C.J. and CLIFFORD, LEVY, SILVER, and MEAD. JJ.

Dissent: ALEXANDER, J.

MEAD, J.

[¶ 1] Robert G. Conrad appeals from a judgment of the District Court (South Paris, *Lawrence, J.*) denying his objection to a final order of parental rights and responsibilities in which the Family Law Magistrate (*Carlson, M.*) rendered a default judgment against him for failure to appear. Conrad argues that the court abused its discretion by denying his objection and adopting the default judgment as the court's final order of parental rights and responsibilities. In addition, Conrad argues that the magistrate erred by failing to consider the best interest of the child as mandated by 19–A M.R.S. § 1653(3) (2006). We conclude that Conrad's arguments are without merit and therefore affirm the judgment.

## I. BACKGROUND

[¶ 2] Sheryl V. Swan gave birth to a daughter in April 2006. The child's father, Robert G. Conrad, filed a complaint for determination of paternity, parental rights and responsibilities, and child support in May 2006. A case management conference was held, after which the family law magistrate entered an interim order awarding sole parental rights and primary residence to Swan with reasonable rights of contact for Conrad. A final uncontested hearing was scheduled for July 2006.

was certified.

[¶ 3] Although a hearing was held, it was neither final nor uncontested because Conrad again raised the issues of paternity and child support. The magistrate ordered the Department of Health and Human Services to conduct a paternity test and scheduled a status conference for September 21, 2006.[1] Swan appeared at the conference and presented evidence to the magistrate. Conrad, however, failed to appear. As a result, the magistrate entered a default against Conrad and conducted a final hearing.[2] After "carefully consider[ing] the evidence," the magistrate entered a final parental rights order granting Swan sole parental rights and responsibilities and primary residential care of the child, with reasonable rights of contact for Conrad.[3]

[¶ 4] Conrad filed an objection in the District Court.[4] He admitted that he failed to appear at the September 21 conference, but argued that his absence should be excused because he was "confused regarding the interrelationship" of the parental rights hearing and a separate child protective proceeding. That proceeding was first initiated by the Department on behalf of Kaylee on September 25, 2006, four days after Conrad failed to appear.

[¶ 5] The court rejected Conrad's objection and adopted the magistrate's parental rights order as the final order of the court. Noting that Conrad had been sanc-

tioned by the magistrate for his failure to appear at the status conference, the court observed that it is well settled that a litigant's failure to take appropriate steps to protect his interests "does not give rise to a proper basis for undoing the consequences of a party's inattentiveness or inaction." The court held that Conrad, having failed to appear, "may not now seek to be heard ... in an effort to undo [the magistrate's order] when he did not act to protect his rights after having been given adequate notice of the need to do so."

[¶ 6] In reaching this conclusion, the court found that Conrad did not claim to have made any effort to contact the court regarding his supposed confusion over dates, and noted that:

> It is not entirely clear how [Conrad] could have been confused about the interplay between his parental rights action and a child protective proceeding on or before September 21, 2006, when the petition for the child protection proceeding was not filed with the court until four days later on September 25, 2006.

This appeal followed.

## II. DISCUSSION

A. Conrad's Motion to Set Aside the Default Judgment

[¶ 7] The Family Division of the District Court, created pursuant to 4 M.R.S. § 183 (2006), has jurisdiction over disputes

---

1. The results of the paternity test showed that there was a 99.9% probability that Conrad was the child's father.

2. Pursuant to M.R. Fam. Div. III(H)(1), a magistrate may enter a default or default judgment as a sanction for failure to appear.

3. The September 21, 2006, parental rights and responsibilities order essentially incorporated and finalized the interim order.

4. Any party who wishes to appeal a magistrate's final order must first file an objection

in the District Court within twenty-one days of the entry of the order. M.R. Fam. Div. III(G)(2). The District Court judge who reviews the record in response to the objection may adopt, modify or reject the interim order. M.R. Fam. Div. III(G)(2)(b). If the objection is rejected and the magistrate's order adopted, the party may appeal the order to this Court in accordance with the Maine Rules of Appellate Procedure. M.R. Fam. Div. III(G)(3).

regarding parental rights and responsibilities, paternity, and child support. 4 M.R.S. § 183(1)(D); M.R. Fam. Div. I(A). Although magistrates may enter interim orders in most family law actions, they may issue final orders only in uncontested proceedings, or in proceedings where the only contested issue is child support. 4 M.R.S. § 183(1)(D); M.R. Fam. Div. III(F).

[¶ 8] The Family Division Rules provide that: "Whenever a complaint or motion is filed in any proceeding involving minor children over which a [magistrate] has jurisdiction, the parties and their counsel are required to attend a case management conference with a [magistrate]." M.R. Fam. Div. III(A)(1). If a party fails to appear at a case management or status conference "without good cause," the magistrate may dismiss a complaint, motion or pleading with or without prejudice, and may issue a default or default judgment. M.R. Fam. Div. III(H)(1). Although the Family Division Rules do not define "good cause," the standard is indistinguishable from that of M.R. Civ. P. 55, which governs defaults in other civil suits.[5]

[¶ 9] In order to establish good cause, "a party must show a good excuse for his or her untimeliness and a meritorious defense." *Truman v. Browne*, 2001 ME 182, ¶ 9, 788 A.2d 168, 170. "We review a trial court's ruling on a motion to set aside a default for abuse of discretion and will vacate the judgment only if the denial works a plain and unmistakable injustice against the defendant."[6] *Id.* (quotation marks omitted). We give considerable deference to the trial court's decision because of its familiarity with the case and its superior position to evaluate the credibility and good faith of the parties. *Porges v. Reid*, 423 A.2d 542, 544 (Me.1980).

[¶ 10] Conrad argues that the court abused its discretion by denying his objection to the magistrate's order of parental rights and responsibilities, thereby letting stand the default judgment against him. He claims, contrary to the court's ruling, that his confusion over the separate parental rights and child protective actions constituted good cause to set aside the default.[7] We disagree.

---

**5.** M.R. Civ. P. 55(c) provides that "[f]or good cause shown, the court may set aside an entry of default."

**6.** Ordinarily, the appeal of a magistrate's order is heard by the District Court acting as an appellate court. Upon appeal to this Court, we then review the magistrate's order directly. *Lawrence v. Webber*, 2006 ME 36, ¶ 6, 894 A.2d 480, 482–83. Here, Conrad also appeals the District Court's denial of his motion to set aside the default judgment. As such, the District Court was acting pursuant to its original jurisdiction and not in an appellate capacity. Again, we review the District Court's decision directly. The standard of review is the same whether we review the magistrate's order or a judgment of the District Court resulting from it. *Id.* ¶ 6, 894 A.2d at 483.

**7.** In addition, Conrad argues that the District Court erred by denying his objection without a hearing. The court's decision concerning the need for a hearing is reviewed for an abuse of discretion. *See, e.g., Conservatorship of Anthony D.G. Jr.*, 2007 ME 25, ¶ 9, 916 A.2d 223, 224–25 (vacating and remanding decision of probate court for further proceedings, including, at the court's discretion, a case conference or hearing on the petition for withdrawal); *Pierce v. Central Maine Power Co.*, 622 A.2d 80, 84 (Me.1993) (reviewing the denial of a hearing regarding prejudgment interest for an abuse of discretion). We conclude that the court did not abuse its discretion by not holding a hearing on Conrad's objection. First, Conrad failed to request a hearing. Second, the record before the court was sufficient for it to judge the merits of Conrad's objection without a hearing. The court was aware of the grounds on which Conrad's objection was based and had sufficient evidence in the record to rule on his claim.

[¶ 11] Conrad's objection to the final order failed to establish a good excuse for his absence. *See Truman,* 2001 ME 182, ¶ 9, 788 A.2d at 170 ("[t]o establish 'good cause,' a party must show a good excuse"). The court did not abuse its discretion in rejecting Conrad's dubious claim that he was confused over the relationship between the parental rights and child protective actions, given that the child protective action did not exist until it was filed four days after he failed to appear at the parental rights status conference. In any event, had Conrad truly been confused he should have contacted the court for clarification, not missed the status conference altogether. Accordingly, Conrad failed to demonstrate good cause for his failure to appear, and we affirm the District Court's denial of his objection to the default judgment entered against him.

[¶ 12] The dissenting opinion suggests that Conrad's failure to attend the September 21, 2006, case management conference resulted in the "heavy price of default in the effort that he had initiated to establish a relationship with his daughter." In fact, at the time of his failure to appear the only remaining issues—both raised by Conrad—were paternity and child support. Although the magistrate had earlier granted Conrad rights of parent/child contact, Conrad still sought to avoid any responsibility for Kaylee by asserting that he was not her father, and by declining to voluntarily pay child support.

[¶ 13] Shortly before the September 21 status conference, the results of the paternity testing were filed with the District Court, showing a 99.99% chance that Conrad was the father of the child. In the face of this overwhelming evidence, Conrad lost his last opportunity to avoid responsibility for the child. As he had already been granted rights of parent/child contact, and the child support was subject to a formulaic computation, little was left to contest. When he failed, without any credible reason, to attend the case management conference,[8] although the magistrate properly defaulted him, he was left with the same rights and responsibilities that would have almost certainly resulted from a later contested hearing, particularly given the fact that he never sought, and does not seek here, additional contact with his daughter. Thus the dissenting opinion's effort to cast Conrad in the role of a concerned father fighting for a relationship with his child, and being deprived of that opportunity by an inhumane process, does not square with the record.

[¶ 14] While the scheduling of repetitive case management conferences could lead to confusion or frustration on the part of litigants, this matter is hardly a case study in injustice.[9] Here, a litigant who attempted to avoid his proper family responsibilities failed to appear, without justification, at a conference at which his paternity (as established by testing) would be the primary topic of discussion. He was defaulted; his paternity was confirmed; his parental rights of contact were confirmed; his obligation to pay child support was confirmed. This result was not contrary to the objectives of a system of justice that is intended to address the needs

---

8. The notice of the case management conference clearly states that a failure to attend the conference may result in the matter proceeding to a final hearing in the defaulting party's absence.

9. The dissent expresses concern about repeated status conferences in family matters. While critical review of scheduling practices is generally a worthwhile undertaking, the instant matter is not a productive forum for this discussion. In this matter, the magistrate scheduled a total of one conference, in addition to the conference mandated by Rule III(A)(1), after the aborted final hearing. Conrad's circumstances can in no way be attributed to any systemic scheduling flaws.

of families and children in the State of Maine.

## B. Best Interest of the Child

 [¶ 15] Conrad further argues that the magistrate erred in awarding Swan sole parental rights because, as a result of the default judgment, the record is devoid of any evidence that the magistrate considered the factors set out in 19–A M.R.S. § 1653(3) when deciding what was in the child's best interest.[10] Conrad bases his argument on the lack of explicit factual findings in the parental rights order. We review the court's award of parental rights for clear error, and will vacate its judgment only if there is no competent evidence in the record to support it. *Rodrigue v. Brewer,* 667 A.2d 605, 606 (Me.1995).

 [¶ 16] We decline to consider Conrad's claim, raised for the first time on appeal. Issues raised initially on appeal are unpreserved. *Fitch v. Doe,* 2005 ME 39, ¶ 27, 869 A.2d 722, 729. Additionally, we note that neither party filed a motion for findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(a), or a statement of evidence pursuant to M.R.App. P. 5(d). In the absence of a request for further findings, we assume that there was competent evidence in the record to support the magistrate's order. *See Powell v. Powell,* 645 A.2d 622, 623–24 (Me.1994). The entry is:

Judgment affirmed.

ALEXANDER, J., dissenting.

[¶ 17] I respectfully dissent. The Court's action today frustrates legislative policy that both parents participate in decision-making regarding their children, and gives its seal of approval to a pre-trial conference scheduling practice of Family Law Magistrates that has been criticized by this Court's own Family Division Task Force.

[¶ 18] This case was initiated by Robert Conrad filing a complaint to define parental rights and responsibilities regarding his daughter. 19–A M.R.S. §§ 1651–1658 (2006). A case management conference was held with the parties on June 29, 2006. Because the Family Law Magistrate believed that no issues were contested, the June 29 case management order indicated that an uncontested "final hearing" would be held on July 10, 2006.

[¶ 19] When, meeting with the parties on July 10, the magistrate determined that some issues would be contested, the magistrate treated the proceeding as a pretrial status conference and scheduled another pre-trial status conference for September 21, 2006. Unlike the June 29 order, the July 10 order did not specify any action that the parties could anticipate would be taken at the September 21 conference. The space indicating that a final hearing might be anticipated was left blank, as were all other spaces on the form indicating any court action that might be taken on September 21. Other than scheduling the pre-trial status conference, the order

---

10. Determinations of parental rights and responsibilities are governed by 19–A M.R.S. § 1653 (2006), which provides that the court may award one or both of the parties allocated, shared or sole parental rights and responsibilities in accordance with the best interest of the child, 19–A M.R.S. § 1653(2)(D)(1); *see Rodrigue v. Brewer,* 667 A.2d 605, 606 (Me. 1995) ("The paramount consideration ... when allocating parental rights and responsibilities is the best interests of the child."). In determining what is in a child's best interest, the court's primary consideration must be the child's safety and well-being. 19–A M.R.S. § 1653(3). However, the court must also consider several other factors, for example the child's age, the child's relationship to each of the parents, and the child's living arrangements. 19–A M.R.S. § 1653(3).

only indicated that "DHHS will conduct paternity testing" and that paternity and child support were contested. The form order did state that if a party failed to appear "for the event scheduled below, the matter may proceed to a final hearing in that party's absence."[11] In effect, the order did not indicate that anything might be accomplished if both parties did appear, but warned of a final hearing if one party did not appear.

[¶ 20] This pre-trial conference scheduling order was not an aberration. It reflected a widespread practice of Family Law Magistrates scheduling repetitive pre-trial status conferences, requiring parties to appear at court, but without any specific objective to be achieved in the court appearance. In a November 2006 report, our Family Division Task Force expressed concern about "too many case management conferences at which little is accomplished." Family Division Task Force Report at 3 (2006). The Task Force noted that "some current scheduling practices indiscriminately promote numerous conferences in pre-and post-judgment family matters." The Task Force report also stated a goal "to reduce the number of magistrate events that do not address substantive issues." *Id.* at 2.

[¶ 21] For failing to attend a magistrate event that was not planned to address any substantive issue or accomplish any case related task, Robert Conrad paid a heavy price of default in the effort that he had initiated to establish a relationship with his daughter. That sanction is way out of proportion to Conrad's fault relative to the lack of objectives for the magistrate event he did not attend. Approving such a sanction implies the Court's approval of repetitive and unproductive magistrate event scheduling practices.[12]

[¶ 22] Our past precedent emphasizes that defaults should be entered with great caution and only for serious misconduct. Based on that precedent, we should not affirm the entry of a default judgment against a plaintiff in a civil action, when the plaintiff files a civil complaint, appears and participates in two case management conferences, but then fails to attend a subsequent pre-trial status conference. *See, e.g., Design Build of Maine v. Paul,* 601 A.2d 1089, 1091–92 (Me.1992) (vacating default for failure to answer amended counterclaim and holding that default, pretrial, is appropriate only for "serious instances of noncompliance with pretrial procedures").

[¶ 23] Even default for failure to appear for a scheduled trial is a sanction that we have stated should be invoked with great caution. *See Westbrook v. Wallace,* 478 A.2d 687, 690 (Me.1984) (affirming dismissal with prejudice when plaintiff's counsel, feigning illness, failed to appear for trial, but cautioning that "[i]n many instances our trial courts would do well to consider, as they have in the past, a lesser sanction than dismissal. Only when the conduct of the attorney seriously threatens the ability of the court to manage its own affairs should dismissal with prejudice be considered."); *Sheepscot Land Corp., v. Gregory,* 383 A.2d 16, 23 (Me.1978) (affirming default for a failure to appear for trial, but noting "the presumption being that

---

11. In addition to a pre-trial status conference, the selection of "event[s] scheduled below" on the form included a final hearing and other options by which the court might address and resolve contested matters. None of those choices were checked as possibly occurring at the same time as the pre-trial status conference.

12. Upon learning of the full extent of the problems with magistrate scheduling in the summer of 2006, our Chief Justice initiated efforts to reduce the number of magistrate events that do not address substantive issues. Those efforts are on-going and have achieved some success.

justice is better served by adjudicating cases on their merits than by the use of default judgments").

[¶ 24] Imposition of the most severe sanction against a parent, a default judgment awarding sole parental rights and responsibilities to the other parent, for failure to attend a status conference is at odds with the public policies that underlie Maine's law governing parental rights and responsibilities and the goals of the Family Division. The State has a substantial, statutorily defined interest in matters affecting the welfare of children, and a legislative policy that favors participation of both parents in judicial "best interests" decision-making and disfavors award of sole parental rights and responsibilities absent a substantial reason for such a result. *See* 19–A M.R.S. §§ 1653(1)(C), 1653(3) (2006). Section 1653(1)(C) states:

> The Legislature finds and declares that it is the public policy of this State to assure minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage and that it is in the public interest to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy.

The default frustrated achievement of that legislative policy.

[¶ 25] The default also is contrary to several of the best interest criteria in section 1653(3), that promote shared parenting.[13] The best interest factors seek to encourage the development of relationships between children and parents, and support cooperative opportunities among parents related to the upbringing of the child.

[¶ 26] The mission of the Family Division is to "provide a system of justice that is responsive to the needs of families and the support of their children." M.R. Fam. Div. II(A). One goal of the Family Division is "[t]o minimize the harm to children caused by family law cases." M.R. Fam. Div. II(B)(9). The sanction imposed by the magistrate for a single non-appearance at a conference, midway through the proceeding, resulted in a child custody decision based on limited information received from one party at a status conference, instead of testimony of both parents at a hearing. This is contrary to a system of justice that is intended to respond to the needs of a family and consider the best interests of the child based on competent evidence of the family's actual circumstances.

[¶ 27] Family Division Rule III(H)(1) provides a range of possible sanctions in the event that a party fails to appear at a pretrial status conference without good cause, which include "an interim, status conference or pretrial order, a default, or a default judgment." The imposition of the most severe sanction in this case, based on

---

**13.** The best interest factors that show a legislative preference for shared parenting when the circumstances justify such an award include:

> **B.** The relationship of the child with the child's parents and any other persons who may significantly affect the child's welfare;
>
> . . . .
>
> **F.** The motivation of the parties involved and their capacities to give the child love, affection and guidance;
>
> . . . .

> **H.** The capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent, including physical access;
> **I.** The capacity of each parent to cooperate or to learn to cooperate in child care;
> **J.** Methods for assisting parental cooperation and resolving disputes and each parent's willingness to use those methods;
> **K.** The effect on the child if one parent has sole authority over the child's upbringing.

19–A M.R.S. § 1653(3) (2006).

Conrad's single failure to attend a status conference, at which nothing was scheduled to be accomplished, is plainly disproportionate and was an abuse of discretion. The judgment should be vacated and this case remanded for further proceedings including, if necessary, a hearing at which Conrad and Swan are both afforded the opportunity to be heard on the parenting arrangement that will best meet their daughter's needs.