MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2015 ME 105
Docket:        Kno-14-157
Argued:        December 10, 2014
Decided:       August 6, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

PAMELA M. JENSEN

v.

LARRY R. JENSEN

SAUFLEY, C.J.

[¶1] Pamela M. Jensen appeals from a judgment entered in the District Court (Rockland, *Sparaco, J.*) adopting a divorce judgment entered by a family law magistrate (*Mathews, M.*) despite Pamela's objection to the judgment. She argues that the magistrate erred in denying her motion to set aside a settlement agreement that she and her former husband, Larry R. Jensen, arrived at following mediation and erred in entering the divorce judgment over her objection. We conclude that, because Pamela contested the terms of the agreement before the entry of a final judgment, and because this matter does not involve minor children or child support, the magistrate was without jurisdiction to enter the judgment and should have referred the parties to a hearing before a judge in accordance with 4 M.R.S. § 183(1)(D) (2014) and M.R. Civ. P. 114. Accordingly, we vacate the judgment and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

[¶2]   Pamela and Larry were married for almost thirty-five years before Pamela filed for divorce in March 2013.  The complaint for divorce indicated that the couple has no minor children.  Prior to attending court-sponsored mediation, both parties filed financial statements.  In Pamela's financial statement, after disclosing other real property, bank accounts, and marital debts, Pamela listed Larry's Maine Public Employee Retirement System (MePERS) account, which he has accrued through his employment as a teacher.  Pamela's financial statement reported that the account had a "balance" of $225,224.10 as of December 11, 2011.  Larry did not disclose the existence of the MePERS account, its value, or its nature in his financial statement.  Neither party presented evidence of the present value of the defined-benefit retirement account.[1]

[¶3]   The parties, both represented by counsel, attended mediation in July 2013.  At that time, the parties reached an agreement on all pending issues and signed a "points of agreement" form.  The agreement purported to distribute all of the marital and nonmarital property and debts.  By the agreement's terms, Pamela would own the marital home and real estate, which has approximately $85,000 in

---

[1]   The MePERS account was never given a present value, either by the parties or by the court. Attached to Pamela's motion to set aside the mediated agreement was a letter from MePERS indicating that Larry's accumulated contributions and interest totaled $249,223.63 as of November 2013.  The amount of Larry's contributions, however, bears little relationship to the full value of the MePERS account—a defined-benefit pension that guarantees that, after he retires, Larry will receive $3,678.95 per month for the rest of his life.

equity, and be responsible for the accompanying debt.[2] She would also receive a car, several joint bank accounts with a total balance of over $4,600, her IRA with a balance of $48,210, and any other accounts in her name. Larry would receive a credit union account with an $865 balance, a car, his IRA with a balance of $49,381, and any other accounts in his name. The MePERS account would be allocated to Larry in its entirety.

[¶4] In addition to assuming the mortgage on the marital home and real estate,[3] Pamela would be allocated the debt related to a Chase credit card. Larry would be allocated the debts associated with Bank of America, TD Bank, and Maine Education Credit Union. The agreement also stated that Larry agreed to pay spousal support to Pamela in the amount of $750 per month for the first twelve months and $500 per month for the following four years, resulting in a total of approximately $33,000 in payments over the five years.

[¶5] Immediately following mediation, an uncontested hearing was held before a family law magistrate at which both parties, and their counsel, were present. Larry testified and placed the agreement's terms on the record, which

---

[2] At the time of mediation, Pamela estimated the value of the marital home and real estate at $220,000, and Larry estimated the value at $250,000. An appraisal indicated that the outstanding balance on the mortgage and home equity line of credit totaled $121,067. At the time of mediation, the home had $98,933 in equity according to Pamela's estimate or $128,933 according to Larry's estimate. At the time the divorce judgment was entered, however, the most recent appraisal of the real estate set the value at $205,000. Thus, there is approximately $85,000 in equity in the property.

[3] The agreement stated that Larry was to pay the August mortgage payment.

4

included allocating the MePERS account to himself. Larry did not describe the MePERS account as marital property or place a value on the account.

[¶6] Larry testified that he believed that the terms of the agreement represented a fair and equitable distribution of the parties' assets and debts. The magistrate then asked Pamela whether she was in agreement with Larry's testimony and with the terms as described by Larry and in the mediated agreement, to which she simply responded, "Yes." Larry's counsel then indicated that he would prepare the proposed divorce judgment for the court's signature. *See* 19-A M.R.S. § 251(3) (2014) ("An agreement reached by the parties through mediation on issues must be reduced to writing, signed by the parties and presented to the court for approval as a court order."); *see also* M.R. Civ. P. 114(b)(2) ("A magistrate may enter final judgments or orders on [issues other than child support] by agreement of the parties or when the matter is unopposed.").

[¶7] On the same day that Larry filed the proposed divorce judgment detailing the terms that the parties had previously agreed upon, new counsel appeared for Pamela. Pamela's new counsel immediately objected to the proposed divorce judgment. After a status conference, the magistrate allowed Pamela fifteen days to file a motion specifying the basis for her objection.

[¶8] Pamela's subsequent motion to set aside the mediated agreement and supporting affidavit argued that the mediated agreement and proposed judgment

were "manifestly unjust" because she had been unaware that Larry's MePERS account, which had a substantial but unidentified value, was marital property subject to division.[4] *See Cloutier v. Cloutier*, 2003 ME 4, ¶ 11, 814 A.2d 979. She argued that she would not have consented to the agreed-upon property distribution had she known that she may be entitled to a portion of the account.

[¶9] The magistrate denied Pamela's motion. Citing *Page v. Page*, 671 A.2d 956 (Me. 1996), the magistrate concluded that Pamela's withdrawal of consent after placing the matter on the record was of no significance. That same day, the magistrate signed the proposed divorce judgment.

[¶10] Pamela filed an objection to the magistrate's decision denying her motion to set aside the mediated agreement and to the divorce judgment. The District Court (*Sparaco, J.*) adopted the magistrate's decision and the divorce judgment. *See* M.R. Civ. P. 118(a)(2). Pamela appealed. *See* 19-A M.R.S. § 104 (2014); M.R. Civ. P. 118(b); M.R. App. P. 2(b)(3).

## II. DISCUSSION

[¶11] Although neither party raises the issue of whether the magistrate had subject matter jurisdiction to enter a final divorce judgment when the parties contested its contents, "the issue of a court's authority may be raised *sua sponte* at any point." *Foley v. Ziegler*, 2005 ME 117, ¶ 8, 887 A.2d 36; *see* M.R.

---

[4] Neither party appears to dispute that the MePERS account is approximately 94% marital.

6

Civ. P. 12(h)(3); M.R. App. P. 4(d). "Subject matter jurisdiction refers to the power of a particular court to hear the type of case that is then before it." *Hawley v. Murphy*, 1999 ME 127, ¶ 8, 736 A.2d 268 (alteration omitted) (quotation marks omitted). "A judgment that is issued by a court that does not have subject matter jurisdiction to issue it is void." *Id.*

[¶12]  The Family Division of the District Court is designed in part to "provide a system of justice that is responsive to the needs of families and the support of their children." 4 M.R.S. § 183 (2014). To carry out this central purpose, family law magistrates are employed by the court to hear and dispose of specified matters. *See id.* § 183(1)(D); M.R. Civ. P. 114.

[¶13]  Family Division magistrates have limited jurisdiction over family matters filed in District Court, including limited jurisdiction in divorce actions not involving minor children. *See* 4 M.R.S. § 183. The explicit demarcation of the type of family matters that a magistrate has the authority to hear and dispose of is directly related to a magistrate's primary objective—"to promptly address the family's situation to assure that the *children's* needs are being met, including the provision of financial support." Report to the Joint Standing Committee on Judiciary of the 127th Legislature and the Maine Supreme Judicial Court on Cases

Handled by the Family Division of the Maine District Court 5 (Feb. 2015) (emphasis added).[5]

[¶14]   By statute and rule, there are generally two instances when a magistrate has jurisdiction to enter a final judgment or order in a divorce proceeding: first, when child support is the only issue being contested by the parties, 4 M.R.S. § 183(1)(D)(4); M.R. Civ. P. 114(b)(1); *see Foley*, 2005 ME 117, ¶¶ 9, 12, 887 A.2d 36, and second, "when the proceeding is uncontested," 4 M.R.S. § 183(1)(D)(3); M.R. Civ. P. 114(b)(2) ("A magistrate may enter final judgments or orders on other issues by agreement of the parties or when the matter is unopposed."). Thus, pursuant to section 183(1)(D)(3), a magistrate does not have the authority to enter a final divorce judgment in a case involving no minor children when there are issues being contested by the parties.[6]  *Cf. Foley*, 2005 ME 117, ¶¶ 9, 12, 887 A.2d 36.

[¶15]  Here, no issues of child support were before the magistrate for final adjudication.  *See* 4 M.R.S. § 183(1)(D)(4).  Although the magistrate had the

---

[5]  With only eight magistrates providing statewide coverage in twenty-seven District Court locations and approximately 15,000 family matter cases processed annually, it is essential that magistrates are available for cases involving minor children so that both judges and magistrates are able "to consistently address each family's case in a timely manner." Report to the Joint Standing Committee on Judiciary of the 127th Legislature and the Maine Supreme Judicial Court on Cases Handled by the Family Division of the Maine District Court 4-5 (Feb. 2015).

[6]  Magistrates may also have jurisdiction to enter judgments or orders in "[o]ther actions assigned by the Chief Judge of the District Court." 4 M.R.S. § 183(1)(D)(5) (2014).  There is nothing in the record to suggest that this catch-all provision applies in the matter before us.

8

authority to enter a final divorce judgment if Pamela and Larry were in agreement regarding the terms of their divorce, *see id.* § 183(1)(D)(3), the magistrate was divested of that jurisdiction upon Pamela's objection to the proposed divorce judgment and subsequent motion to set aside the mediated agreement. Pamela's objection and subsequent motion, both filed before the final entry of judgment, converted the parties' initially uncontested divorce proceeding into a contested proceeding.

[¶16] This case is distinguishable from *Page v. Page,* where one party's withdrawal of consent after the parties had entered into a settlement agreement and placed it on the record had no effect on the *judge's* authority to enter a final divorce judgment in accordance with the agreement's terms. 671 A.2d at 957-58. A judge's authority to hear and dispose of family matters, in contrast to that of a magistrate, is not statutorily constrained by section 183.

[¶17] Thus, the magistrate was without jurisdiction to enter a final divorce judgment. *See* 4 M.R.S. § 183(1)(D). Once the matter became contested, it should have been referred to a District Court judge for a ruling on Pamela's motion. Although a District Court judge reviewed the magistrate's decision upon Pamela's objection, she did so with deference to the magistrate's actions; it was not a de novo determination of the issues presented. When a party objects to a magistrate's final order or judgment on a matter where the magistrate had jurisdiction pursuant

to section 183(1)(D), the District Court ordinarily reviews the matter as an appellate court, *see Conrad v. Swan*, 2008 ME 2, ¶ 9 n.6, 940 A.2d 1070, and property distributions are reviewed for an abuse of discretion, *see Bond v. Bond*, 2011 ME 54, ¶ 10, 17 A.3d 1219.  Here, however, the District Court judge cannot defer to the magistrate's determination because the magistrate did not have the authority to act on Pamela's objection in the first instance.  The District Court's consideration of the objection therefore must be de novo.

[¶18]  Accordingly, we must remand this matter to the District Court for action by a judge on Pamela's motion to set aside the agreement and for any further proceedings necessary for the resolution of the matter.[7]

The entry is:

> Judgment vacated.  Remanded to the District Court for consideration of Pamela's motion to set aside the mediated agreement.

---

**On the briefs and at oral argument:**

Christopher K. MacLean, Esq., Elliott & MacLean, LLP, Camden, for appellant Pamela M. Jensen

Philip S. Cohen, Esq., Law Offices of Cohen & Cohen, P.C., Waldoboro, for appellee Larry R. Jensen

Rockland District Court docket number FM-2013-56
FOR CLERK REFERENCE ONLY

---

[7]  Whether the District Court judge hears only argument from counsel or instead also hears brief testimony from the parties is left to the discretion of the court.